59 CCPA

**Application of Jules Edmond VAN LANGENHOVEN.**

**Patent Appeal No. 8587.**

United States Court of Customs and Patent Appeals.
April 20, 1972.
Rehearing Denied June 22, 1972.

Bruce G. Klaas, Detroit, Mich. (Harness, Dickey & Pierce, Detroit, Mich.), attys. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the examiner's rejection of two groups of claims, claims 190 through 200 and claims 202, 206, 216, 217, 240 and 241, of appellant's application serial No. 473,556, filed July 7, 1965, entitled "Air Operated Projectile Firing Apparatus." The board reversed the examiner as to a third group including claims 180, 201, 203, 204, 205, 207 through 215, 218 through 222, 224 through 239, and 242 through 253. We affirm the board's decision sustaining the examiner's rejection of the first-mentioned two groups of claims.

Appellant's specification discloses an air gun in which, at the option of the user, either propellant or propellant-less projectiles may be fired. A partial side elevational view in section of the gun structure is shown in Fig. 1 of the application drawings reproduced below.

VAN LANGENHOVEN S.N. 473,556

Referring to the illustration, the compression cylinder 45 receives a plunger element 46 having a cup-shaped packing 48. A compression spring 62 mounted about the plunger rod 52 and guide sleeve 60 moves the plunger 46 into the cylinder 45 when a trigger 80 is operated to release the catch 79 from the slot 70 in the rod 52. The passage of air compressed in the cylinder 45 to the firing chamber is controlled by a ball valve 146 biased by an adjustable spring 148. A round of ammunition 110 may contain an explosive propellant which is ignited by the heat and pressure of the compressed air, or it may contain no propellant and may be shot from the gun barrel solely by the pressure of the compressed air. In one embodiment, the air gun may include breech means in the form of a revolving cylinder for rapidly delivering successive rounds of ammunition from a loading position to a firing position adjacent the barrel 16.

Rejected claims 190 through 199, 202, 206, 216, 217, 240 and 241 are drawn to the disclosed firearm, while claim 200 is directed to a method of firing ammuni-

tion using the disclosed air gun. Of these, claims 190 through 200 require, inter alia, flow control means which may be the aforementioned spring-biased ball valve and are designated herein as the "valve claims." The remaining claims on appeal, 202, 206, 216, 217, 240 and 241, recite, inter alia, the breech means and are termed the "breech claims." The issues involved are different for each set of claims, and so we treat each of these groups seriatim.

## VALVE CLAIMS

The valve recital in claim 190 is illustrative and reads as follows:

190. * * * and flow control means in the firearm to prevent flow of the propellant gases through said passage means to said air compression chamber means from said firing chamber means after ignition of the propellant and defining a closed firing chamber having a fixed continuous rigid reaction wall for the propellant gases and confining the effects of propellant ignition to the closed firing chamber means and said bore means whereby the propellant generated forces will be applied to the propulsion of the projectile from the firearm.

The other claims in this group recite in broad language of varying scope means to close the passage after delivery of the high temperature compressed air to the firing chamber, or means operable by pressure differential, or means preventing the flow of explosive fluids to the source of high temperature fluid, or blowback control means. Claim 200 recites the method of firing a projectile by igniting the propellant by contact with high temperature air and closing off the source of high temperature air.

The valve claims were rejected by the examiner under 35 U.S.C. § 103 as unpatentable over Newmarch[1] alone or Newmarch in view of Vilbajo.[2] The early Newmarch patent discloses, in the partial drawing reproduced below, an air compression firearm wherein the heat resulting from the compression of air in the cylinder $d$ ignites gunpowder contained in the gun barrel $a$. A piston $f$ moved by a spring (not shown), which is mounted in the gun stock and acts through the piston rod, compresses air in the cylinder $d$ and the hot compressed air passes by a small ball valve $n$ in a passage $c$ between the cylinder $d$ and the gun barrel $a$ to ignite a propellant charge. Newmarch does not elaborate on the specific structure of the illustrated ball valve $n$.

NEWMARCH BRITISH 5317 of 1826

[A5667]

---

1. British Patent 5317 of 1826.

2. U.S. Patent 3,064,381 issued November 20, 1962.

The later Vilbajo patent discloses a combination firearm and grenade wherein a grenade is mounted on the muzzle of the firearm. The mounting includes a free-floating ball valve located in a central conical passage to allow compressed gases from the gun muzzle to reach and ignite the grenade propelling charge. The Vilbago ball valve serves to automatically close the passage and prevent the grenade propelling gases from passing back into the gun muzzle.

■ The board affirmed the examiner's rejection of valve claims 190 through 200 stating

* * * in our evaluation of the Newmarch reference we are convinced that this reference makes obvious the use of a check valve providing for admission of the compressed air ignition charge and blocking reverse flow upon the generation of a pressure reversal between the cylinder and combustion chamber. The need for such operation is so fundamental as to be obvious both as a purpose for valve $n$ of Newmarch and as the structure required to accomplish such purpose. The Vilbajo reference as added in rejecting these claims clearly shows the presence in a related propulsion organization of such a common check valve arrangement. We share the Examiner's view that the organization required in any one of claims 190 through 200 would have been obvious to workers in the art as of the time of appellant's entry into the field after considering the applied references.

Appellant contends that it was improper for the board to base a section 103 rejection on speculation as to the meaning of the disclosure of Newmarch, that the speculation was erroneous because of alternate possibilities, and that the prior art indicates a different level of skill and knowledge than that assumed by the board.

The Newmarch specification describes the operation of the valve $n$ as follows:

* * * the power of the helical spring exerts itself and projects the piston forward in its cylinder with such force as to compress the air contained in the cylinder before the piston, and cause it to give out its caloric in the state of sensible heat or fire at the aperture in front of the cylinder where the small ball valve $n$, is placed, and passing by this valve the fire enters the barrel at the touch hole in the breech and instantly ignites the charge of gunpowder.

We find that this disclosure in Newmarch is not speculative and is not indefinite. Appellant's contentions that the Newmarch ball valve $n$ might be a safety valve to prevent compressed air flow if the piston is accidently released, or might be a powder stop valve manually moveable to an open position, or might be an air inlet valve for the cylinder, or might be a powder gas pressure relief valve in a passage connecting the firing chamber to the atmosphere, or might be for several other purposes, are pure speculations and not in accord with the written description quoted above. Appellant further contends that Newmarch discloses no more than a small ball valve located at the aperture in front of the air cylinder and that its manner of mounting and intended functions are not described. The above quotation from the Newmarch patent specification and the Newmarch patent drawings make it clear where the ball is mounted and that it functions as a flow control means to permit the compressed air to flow to the gun barrel to ignite the charge.

■ In any event, Vilbajo clearly shows a particular method of mounting a similar ball valve as well as its function in a firearm having a passage between a source of compressed gases and a powder charge. We conclude that anyone of ordinary skill in the firearm art would have been able to properly mount the small ball valve $n$ taught by Newmarch and also taught by Vilbajo in order to produce the flow control means broadly defined in appellant's claims in the valve claim group.

## BREECH CLAIMS

Claim 202 is representative of the claims in this set, and the pertinent movable breech means recited therein is as follows:

202. * * * relatively movable breech means movably mounted in said receiver means at the rear of said barrel means and at least a portion of said breech means being movable between a firing position and a loading position and said breech means connecting said source to said firing chamber means in the firing position; * * *

* * * air delivery means for delivering high temperature air from said air compression means extending through at least a portion of said breech means and terminating in said firing chamber means; * * *.

The other claims in this group are either dependent on claim 202 or broadly recite ammunition holding means for receiving the projectile and the propellant in a loading position and carrying the same to the firing position. Each of the breech claims is directed to an air ignition firearm having flow control or valve means of the character defined in the valve claims.

The board sustained the examiner's rejection of these breech claims under section 103 as unpatentable over Societe[3] in view of Mihalyi.[4] Appellant contends that his present application is a continuation-in-part application entitled to the benefit of the filing date of his parent application Serial No. 189,621, filed April 23, 1962, which in turn was based on a previously filed application in Belgium, Serial No. 603,313, filed May 3, 1961, now Belgium Patent 480,344. The Societe French patent relied on by the examiner and the board states that a priority application was filed in Belgium May 3, 1961, subsequently issued as Patent No. 480,344, in the name of Jules Edmond van Langenhoven. In other words, the Societe patent is appellant's own French patent which derives from the same Belgian application as appellant's United States applications. Appellant asserts that his own foreign patent may not be used against him and that in any event, his effective filing date in the present application and in his parent application with respect to subject matter common to all is May 3, 1961, his filing date in Belgium, a date prior to that of the Societe patent.

The board noted that the Societe French patent has been applied only against claims involving subject matter which appears for the first time in the continuation-in-part application here on appeal, and that the Societe patent is a publication having a publication date more than one year prior to the time appellant first disclosed the appealed subject matter. The board accordingly held that the Societe subject matter is available under section 102(b) for consideration, along with that which was common knowledge or shown by other prior art, under section 103 to defeat claims to the variations disclosed for the first time more than one year after the date of the Societe publication.

■ To be entitled to the filing date of a previously filed application, appellant's application on appeal would have to satisfy the requirements of 35 U.S.C. § 120, among which is the requirement that the subject matter now claimed be disclosed in the manner prescribed by the first paragraph of section 112 in the prior application. Since, to conform to section 112, claimed subject matter must be described in the specification relied upon, subject matter which is first disclosed in a continuation-in-part application is not entitled to the filing date of the parent application. Martin v. Johnson, 454 F.2d 746, 59 CCPA (1972); In re Lukach, 442 F.2d 967, 58 CCPA 1233, (1971).

The claims in the breech group specifically recite breech means movable be-

---

3. French Patent 1,321,746 granted February 11, 1963.

4. U.S. Patent 2,572,176 issued October 23, 1951.

tween a firing position and a loading position, or movable ammunition holding means for receiving the projectile and the propellant in a loading position and for carrying the same from the loading position to the firing position. Appellant has failed to include the parent application in the record certified to this court, and we therefore cannot determine whether or not the embodiment defined in the breech claims is adequately described in the parent. It is asserted that Fig. 1 of the application on appeal corresponds to Fig. 1 in the parent, and with references to disclosure in the *present* application, appellant attempts to read the breech claim recitations on said Fig. 1. However, we do not know the extent to which the present disclosure corresponds to that in the parent, and the figure, without more, does not support the subject matter defined in the breech claims here on appeal. We accordingly agree with the examiner and the board that appellant is not entitled to the benefit of the filing date of his parent application for the breech claims on appeal since they define subject matter not disclosed in the parent case.

 Since appellant cannot claim the benefit of the filing date of any prior application as to the breech claims, the Societe patent is an available § 102(b) reference. It is of no avail to appellant that the Societe patent is his own. See In re Hafner, 410 F.2d 1403, 56 CCPA 1424 (1969); In re Ruscetta, 255 F.2d 687, 45 CCPA 968 (1958). In addition, the fact that some of the elements of the breech claims have the support of the parent and foreign applications does not change the result. As to given claimed subject matter, only one effective date is applicable. Whether or not the requirements of section 120 are satisfied is determinative of that date, and in the case of the breech claims, those requirements have not been met. Accordingly, the Societe patent may properly be relied upon for all it fairly teaches to establish obviousness, under 35 U.S.C. § 103, of the subject matter defined in the breech claims.

The Mihalyi patent discloses an air gun having a compression cylinder and piston means, a revolving cylinder breech means, and ammunition magazines for feeding projectiles into the breech means. The Societe patent discloses the compression ignition firearm illustrated in appellant's Figs. 1 and 2 of the present application. We agree with the board that the adaptation of breech means to the firearm disclosed in the Societe patent would have been obvious to one of ordinary skill in the art at the time the invention defined in the breech claims was made.

## SUMMARY

With respect to the valve claims 190 through 200, we affirm the decision of the board sustaining the rejection of these claims under section 103 on Newmarch alone or in view of Vilbajo. With respect to the breech claims, we affirm the rejection of these claims under section 103 on Societe in view of Mihalyi.

Affirmed.