### RACING STROLLERS, INC.,
Plaintiff–Appellant,

v.

### TRI INDUSTRIES, INC., Jay Paulson, Paulson Marketing and Tim Galligan, Defendants–Appellees.

No. 89–1241.

United States Court of Appeals, Federal Circuit.

June 26, 1989.

George C. Rondeau, Jr., Seed & Berry, of Seattle, Wash., argued for plaintiff-appellant. With him on the brief was Maurice J. Piro.

Gerald E. Helget, Palmatier & Sjoquist, P.A., of Minneapolis, Minn., argued for defendants-appellees. With him on the brief were Paul L. Sjoquist and H. Dale Palmatier.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, NIES, NEWMAN, BISSELL, ARCHER, MAYER and MICHEL, Circuit Judges.

RICH, Circuit Judge.

This interlocutory appeal comes to us under 28 U.S.C. § 1292(b), the District Court for the District of Minnesota, Fourth Division, Rosenbaum, J., having certified to this court a potentially controlling question of law as to which there is substantial ground for difference of opinion, the answer to which may advance the ultimate determination of this ongoing litigation. We have jurisdiction under 28 U.S.C. §§ 1292(c), 1338(a), and 1295(a).

Appellant, Racing Strollers, Inc., filed its Petition for Leave to Appeal under § 1292(b) which we granted by order dated January 6, 1989. On February 1, 1989, appellant also filed a suggestion for hearing in banc because it was requesting us to overrule a decision of the Court of Customs and Patent Appeals which we regard as precedent in accordance with *South Corp. v. United States*, 690 F.2d 1368, 1370 n. 2, 215 USPQ 657, 658 n. 2 (Fed.Cir.1982). The suggestion was accepted and an in banc hearing was held on June 7, 1989. The issues before us in connection with the certified question were fully briefed.

## BACKGROUND

This suit is, inter alia, for infringement of a design patent, No. Des. 297,525, issued to appellant as assignee September 6, 1988, on a "Frame for a Baby Stroller." The application for the design patent was filed April 14, 1986, but it is stated on the face of the patent to have been a division of an application filed October 22, 1984, now abandoned. The latter application was for a "utility" or mechanical patent. Shortly after suit was filed, plaintiff-appellant applied to the trial court for a temporary

restraining order (TRO) which application defendant-appellee opposed. The TRO was denied on the ground plaintiff had not sustained its burden of establishing a reasonable likelihood of success on the merits. This was because plaintiff had admittedly sold strollers embodying the patented design more than a year before the filing date of the application for the design patent, which would, prima facie, invalidate the design patent under 35 U.S.C. § 102(b). Plaintiff countered, however, with the argument that his design patent application was entitled to "priority" as of the filing date of its parent application for the utility patent which was less than a year after the sale. Countering this, in turn, defendant relied on the case of *In re Campbell,* 41 CCPA 896, 212 F.2d 606, 101 USPQ 406 *cert. denied,* 348 U.S. 858, 75 S.Ct. 82, 99 L.Ed. 676 (1954), which held, in effect, as a question of first impression for that court, that an application for a design patent cannot be a division of an application for a mechanical patent, and thus entitled to the benefit of its filing date. Plaintiff pointed, to no avail, to more recent decisions of this court and of the Patent and Trademark Office (PTO) clearly inconsistent with *Campbell.* The trial judge then stated that he had seen no indication that *Campbell* had ever been overruled or had "died by attrition," and suggested certifying the legal question to this court.

In the court's amended order denying the TRO, dated December 14, 1988, the trial judge said:

This order involves a controlling question of law as to which there is a substantial ground for difference of opinion. An immediate appeal of this Order may materially advance the ultimate determination of the litigation.

Accordingly, this Court certifies the following question of law for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

Whether an application for a design patent filed as a division of an earlier filed application for a utility patent is entitled to the benefit of the earlier filing date of the utility application under 35 U.S.C. § 120 and 35 U.S.C. § 121.

## OPINION

As submitted, the question is incapable of being answered, as a generalized proposition, categorically yes or no because each case will depend on its own *fact* situation. However, it can be put into answerable form and we shall do that shortly.

Giving a patent application the benefit of the earlier filing date of another earlier filed application has a statutory basis and does not rest on the mere claim or recitation of the applicant. Nor is the mere labeling of an application a "division" enough. The statute primarily involved, first enacted as a part of the Patent Act of 1952, provides, insofar as relevant to this case, as follows:

§ 120. *Benefit of earlier filing date in the United States*

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

It is seen that this provision contains a number of "ifs" and at the outset an important condition that in the earlier application being relied on the invention subsequently claimed is "disclosed in the manner provided by the first paragraph of section 112." This paragraph, therefore, is an integral part of § 120 and reads:

§ 112. *Specification*

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or

with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

In the case of an "ornamental design for an article of manufacture," with which we are here concerned, the patenting of which is provided for in 35 U.S.C. § 171, the "best mode" requirement of the first paragraph of § 112 is not applicable, as a design has only one "mode" and it can be described only by illustrations showing what it looks like (though some added description in words may be useful to explain the illustrations). As a practical matter, meeting the remaining requirements of § 112 is, in the case of an ornamental design, simply a question of whether the earlier application contains illustrations, whatever form they may take, depicting the ornamental design illustrated in the later application and claimed therein by the prescribed formal claim:

> The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described. More than one claim is neither required nor permitted.

37 CFR 1.153(a), in relevant part.

Section 121 of the patent statute is a section pertaining specifically to "Divisional applications." For purposes of this opinion it need not be discussed extensively, its operative sentence being: "If the other invention is made the subject of a divisional application *which complies with the requirements of section 120* of this title *it shall be entitled* to the benefit of the filing date of the original application." (Emphasis ours.) We do note, however, that, like § 120, it is an entitlement provision.

The certified question, quoted above, refers to both § 120 and § 121 and to divisional applications. It is seen from the foregoing that § 121 requires compliance with § 120 which in turn requires compliance with part of § 112. Furthermore, § 121 does not assume that every application labeled a "division" is in compliance with § 120. There are detailed factual questions to be resolved before it can be said that an application is entitled, under

§ 120, to the filing date of an earlier application. They are determined by § 120 and § 112, not by § 121.

It seems clear to us that the question being asked by the trial court, considering the circumstances out of which it arose, was engendered entirely by the 1954 *Campbell* decision and that what the trial judge really wants to know is whether we are going to adhere to what *Campbell* decided in view of recent decisions which seem to be in conflict with it, particularly *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 228 USPQ 32 (Fed.Cir.1985). In fact, the phraseology of the certified question is in terms of the facts of the *Campbell* case in which it was asserted that the application for the design patent was a division of an earlier filed application for a utility patent, the benefit of the filing date of which was claimed to overcome a § 102(b) rejection by antedating a reference. And we are asked whether we will grant that benefit, which is tantamount to asking us whether we will or will not stand by *Campbell* as a precedent. If we do, the answer to the certified question would have to be "no."

Appellant appreciates the situation full well and asks us outright to overrule *Campbell*. Knowing that no panel of judges less than a majority of the active judges on the court can do that, appellant also asked us to hear this appeal in banc. Having voted to consider the appeal in banc, we will now recast the question into answerable form:

> Whether, in passing on the validity of a design patent issued on an application filed as a division of an earlier filed application for a utility patent and claiming the benefit of the filing date thereof, we will follow *Campbell* or overrule it.

Our decision is to overrule it, and this should "materially advance the ultimate determination of the litigation," as the trial judge desired and as 28 U.S.C. § 1292(b) contemplates.

Our reason for overruling *Campbell* is simple. We think it was wrongly decided on the basis of faulty and inadequate reasoning. The basic reasons were well stated

in the dissenting opinion by Judge O'Connell, 41 CCPA at ——, 212 F.2d at 612, 101 USPQ at 411, which said:

The Patent Office has here deprived appellant of a substantial property right by a process of reasoning which exploits the trivial and ignores that which is vital and important. The Supreme Court has recently reiterated the long established rule which governs here, namely, that "'A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one. These are questions not of natural but of purely statutory right.'" *Hartford–Empire Co. v. United States*, 323 U.S. 386, 433 [65 S.Ct. 373, 396, 89 L.Ed. 322 (1945)], citing *Chapman v. Wintroath*, 252 U.S. 126, at 137 [40 S.Ct. 234, 236, 64 L.Ed. 491 (1920)].

In our view, § 120 gives to any applicant for a patent *complying with its terms* the right to have the benefit of the filing date of an earlier application. The language is mandatory: "An application for patent ... shall have the same effect ... as though filed on the date of the prior application...." Chapter 16 of Title 35 U.S.C., covering design patents, has only three sections. Section 171 provides that "[t]he provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided." There are no "otherwise provided" statutes to take design patent applications out of the ambit of § 120 which makes no distinction between applications for design patents and applications for utility patents or, as the statute calls them, "patents for inventions" although the statute deems designs to have been invented and to be a kind of invention, subjecting them to all of the requirements for patentability pertaining to utility inventions. Section 172 and 173 have no relevancy to this case.

As stated in the Reviser's Note to § 120 of the 1952 Patent Act,

This section represents present law not expressed in the statute, except for the added requirement that the first applica-

tion must be specifically mentioned in the second.

See 35 U.S.C.A. § 120 (1982), Historical and Revision Notes. For further explanation, see P.J. Federico's "Commentary on the New Patent Act," 35 U.S.C.A. 1 (1954), pages 31–33. In other words, § 120 was a codification of case law of which it was the first statutory expression.

The *Campbell* opinion is remarkable for the fact that, though written in April 1954, more than a year after the effective date of the 1952 Patent Act, it contains no mention of §§ 120 or 121 or 112. The controlling statutory law was simply ignored. The opinion refers in passing to the prior statute from which § 112 was derived, R.S. 4888 (35 U.S.C. § 33, 1946 ed.), and remarks that it was the law in effect when Campbell filed his earliest application, July 30, 1946. But that is irrelevant. When the opinion was written, the 1952 Act had been in effect for over a year. The Act states that it applies to "further proceedings on applications pending on" January 1, 1953, its effective date. Sec. 4(a) of Pub.L. No. 593, Chap. 950, 66 Stat. 815 (1952). The design application on appeal in *Campbell* was, of course, still pending. Thus, it appears that the CCPA in writing the *Campbell* opinion gave no consideration to the controlling statutes then applicable. As Judge O'Connell said in dissent, the majority based its decision on trivia. As the opinion itself shows, the conclusion reached was predicated on a laundry list of all of the differences which could be dredged up between an application for a utility patent and an application for a design patent and their respective prosecutions, fees, forms, etc. The decision simply lacks a firm foundation and there is little to wonder at in the fact that in the ensuing years it has been given little attention and no respect, as indicated, for example, in the 1986 revision of the 1983 edition of the Manual of Patent Examining Procedure (MPEP), § 1504.20:

Where the conditions of 35 U.S.C. 120 are met, a design application may be considered a continuing application [*] of an earlier utility application. Converse-

---

* To consider an application a "continuing appli-

cation" means, of course, that it is entitled to the

ly, this also applies to a utility application relying on the benefit of the filing date of an earlier filed design application.

In light of the *KangaROOS USA, [sic] Inc. v. Caldor, Inc.* [778 F.2d 1571], 228 USPQ 32 (Fed.Cir.1985) and *In re Berkman* [642 F.2d 427], 209 USPQ 45 (CCPA 1981) [decisions, the] holdings [sic] in *In re Campbell* [41 CCPA 896, 212 F.2d 606], 101 USPQ 46 [406] are no longer controlling.

In *KangaROOS, Campbell* was neither cited to nor considered by this court. The panel's primary concern in that case was the issue of inequitable conduct but the right to have asserted the benefit of the filing date of a design patent application in a later filed utility patent application was pivotal to that issue.

We do not regard our point that *Campbell* has been disregarded in some quarters as diminished by appellee's citation to the 1983 edition of the MPEP wherein § 201.06 makes a flatly contradictory statement about *Campbell* being the law. Chapter 200, where the statement appears, is a general discussion entitled "Types, Cross–Noting, and Status of Application." The MPEP is a looseleaf training and instruction manual for examiners which is continually revised in piecemeal fashion and it is not surprising to find inconsistencies in it. Hopefully, after this decision, it will be made consistent on this point. Furthermore, as its Foreword states, "The Manual does not have the force of law or the force of the Patent Rules of Practice" (37 CFR).

## CONCLUSION

We hold, in banc, that the decision in the case of *In re Campbell*, 41 CCPA 896, 212 F.2d 606, 101 USPQ 406 (1954), is *overruled.* This act, together with the foregoing explanations, is as far as we can go in answering the certified question. We believe that, in substance, it does so.

NO COSTS.

earlier "parent"—or "grandparent" etc.—application's filing date in determining what is *"prior*

art" from the standpoint of validity.