**In re Scott J. DANIELS.**

No. 97–1225.

United States Court of Appeals, Federal Circuit.

May 20, 1998.

S. Michael Bender, S. Michael Bender, P.A., of Gulfport, Florida, argued for appellant.

Karen A. Buchanan, Associate Solicitor, Office of Solicitor, of Arlington, Virginia, argued for appellee. With her on brief were Nancy J. Linck, Solicitor, and Albin F. Drost, Deputy Solicitor.

William T. Fryer, III, of Bethesda, Maryland, filed a brief as amicus curiae.

Before NEWMAN, LOURIE, and BRYSON, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Scott J. Daniels appeals the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences, wherein the Board determined that Mr. Daniels' design patent application was not entitled to the benefit of the filing date of an earlier copending design application, and

thus that the subject matter was unpatentable for obviousness in view of an intervening publication.[1]

On June 22, 1992 Mr. Daniels, through American Inventors Corporation, filed design patent application Serial No. 07/902,055 for a "leecher," a device for trapping leeches. The specification consisted of seven drawings, including top (Fig.5) and bottom (Fig.6), and side views showing the leecher decorated on each side with a pattern of leaves, as in Fig. 1:

**FIG. 5**

**FIG. 1**

**FIG. 6**

While the patent application was pending the Federal Trade Commission charged American Inventors Corporation with running a deceptive invention-promotion scheme. *See Federal Trade Comm'n v. American Inventors Corp.*, 37 U.S.P.Q.2d 1154, 1995 WL 768924 (D.Mass.1995). The Board reports the charges that American Inventors Corporation misled inventors by filing design patent applications instead of utility applications and concealing the differences between them.

The Board describes evidence that clients were given a money-back guarantee that a patent would issue, and evidence that the Corporation's draftsman would add decorative matter to the drawings to facilitate issuance as a design patent. *Daniels,* 40 U.S.P.Q.2d at 1397–98.

On April 1, 1994 Mr. Daniels, through new counsel, filed a continuation design application under 37 C.F.R. § 1.62, Serial No. 29/020,787, and by amendment directed the

1. *Ex parte Daniels,* 40 U.S.P.Q.2d 1394, 1996 WL 648365 (Bd. Pat.App. & Interf.1996).

PTO's Official Draftsman to delete the leaf pattern from the drawings. No other changes were made. The application thus contained drawings as shown below:

**FIG. 5**

**FIG. 1**

**FIG. 6**

The examiner rejected the application in view of an intervening marketing brochure showing the leecher of the parent application. This rejection would be obviated if Mr. Daniels were entitled to the priority date of the parent application in accordance with 35 U.S.C. § 120:

> § 120. An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... shall have the same effect, as to such invention, as though filed on the date of the prior application,
> ...

The Board, describing the question as one of first impression, denied Mr. Daniels the benefit of his parent application, holding that the leecher shown in the continuing application is a "new and different" design in that a design is "a unitary thing," and thus that the change in the drawings defeats compliance with the written description requirement of the first paragraph of 35 U.S.C. § 112:

> § 112 ¶1. The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Mr. Daniels appeals, arguing that his parent application fully discloses the leecher design of the continuing application, and thus meets the requirements of § 112 ¶ 1.

### DISCUSSION

■ Entitlement to priority under § 120 is a matter of law, and receives plenary review on appeal. *Racing Strollers, Inc. v. TRI*

*Industries, Inc.*, 878 F.2d 1418, 1419, 11 U.S.P.Q.2d 1300, 1301 (Fed.Cir.1989) (*in banc* ). Any disputed factual questions are reviewed on the clearly erroneous standard. *In re Gosteli*, 872 F.2d 1008, 1012, 10 U.S.P.Q.2d 1614, 1618 (Fed.Cir.1989).

■ The statutory provision governing the effective filing date of the subject matter of continuing applications, 35 U.S.C. § 120, applies to design patents as to utility patents. *See* 35 U.S.C. § 171 ("The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided"): It was confirmed in *Racing Strollers* that "[t]here are no 'otherwise provided' statutes to take design patent applications out of the ambit of § 120 which makes no distinction between applications for design patents and applications for utility patents...." 878 F.2d at 1421, 11 U.S.P.Q.2d at 1302.

■ That the law of § 120 applies to design patent applications is illustrated in the court's rulings that design and utility patents are each entitled to claim priority from the other. *See Racing Strollers*, 878 F.2d at 1418, 11 U.S.P.Q.2d at 1300 (overruling contrary precedent and holding that a design patent may claim priority from a utility patent); *KangaROOS, U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1574, 228 U.S.P.Q. 32, 33 (Fed.Cir.1985) (holding that a utility patent may claim priority from a design patent). The common thread, and the criterion to be met, is whether the later claimed subject matter is described in the earlier application in compliance with § 112 ¶ 1. *See Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 557, 32 U.S.P.Q.2d 1077, 1081 (Fed.Cir.1994) ("an application is entitled to the benefit of the filing date of an earlier application as to common subject matter" when the requirements of § 112 ¶ 1 are met); *In re Hogan*, 559 F.2d 595, 604, 194 U.S.P.Q. 527, 535 (1977); *In re Van Langenhoven*, 59 C.C.P.A. 934, 458 F.2d 132, 136, 173 U.S.P.Q. 426, 429 (1972); *In re Lukach*, 58 C.C.P.A. 1233, 442 F.2d 967, 968, 169 U.S.P.Q. 795, 797 (1971).

■ Thus the earlier application must meet the written description requirement of § 112. The test for sufficiency of the written description is the same, whether for a design or a utility patent. This test has been expressed in various ways; for example, "whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'" *Ralston Purina Co. v. Far–Mar–Co, Inc.*, 772 F.2d 1570, 1575, 227 U.S.P.Q. 177, 179 (Fed.Cir.1985) (quoting *In re Kaslow*, 707 F.2d 1366, 1375, 217 U.S.P.Q. 1089, 1096 (Fed.Cir.1983)). When the earlier disclosure is less than clear on its face, courts have explained that the prior application must "necessarily" have described the later claimed subject matter. *Kennecott Corp. v. Kyocera Int'l, Inc.*, 835 F.2d 1419, 1423, 5 U.S.P.Q.2d 1194, 1198 (Fed.Cir.1987). In general, precedent establishes that although the applicant "does not have to describe exactly the subject matter claimed, ... the description must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed." *In re Gosteli*, 872 F.2d at 1012, 10 U.S.P.Q.2d at 1618 (citations omitted).

■ It is the drawings of the design patent that provide the description of the invention. *In re Klein*, 987 F.2d 1569, 1571, 26 U.S.P.Q.2d 1133, 1134 (Fed.Cir.1993) ("usual[ly] in design applications, there is no description other than the drawings"). Although linguists distinguish between a drawing and a writing, the drawings of the design patent are viewed in terms of the "written description" requirement of § 112. Thus when an issue of priority arises under § 120, one looks to the drawings of the earlier application for disclosure of the subject matter claimed in the later application. *See Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563, 19 U.S.P.Q.2d 1111, 1116 (Fed.Cir. 1991); *Racing Strollers*, 878 F.2d at 1420, 11 U.S.P.Q.2d at 1301. The inquiry is simply to determine whether the inventor had possession at the earlier date of what was claimed at the later date.

■ The leecher as an article of manufacture is clearly visible in the earlier design

application, demonstrating to the artisan viewing that application that Mr. Daniels had possession at that time of the later claimed design of that article; see *Vas–Cath, supra; Ralston–Purina, supra; Racing Strollers, supra; In re Kaslow, supra;* and other guides to application of § 112 ¶ 1 to § 120. The leaf ornamentation did not obscure the design of the leecher, all details of which are visible in the drawings of the earlier application. The leaf design is a mere indicium that does not override the underlying design. The subject matter of the later application is common to that of the earlier application. *See Transco,* 38 F.3d at 557, 32 U.S.P.Q.2d at 1081. In the context of 35 U.S.C. § 171 ("design for an article of manufacture" is the subject matter of a design patent), it is apparent that the earlier application contains a description of what is claimed in the later application. *See In re Gosteli,* 872 F.2d at 1012, 10 U.S.P.Q.2d at 1618.

 The Board held that any change in the drawing defeats a priority claim for a design patent. Departing from the general rule that common subject matter is entitled to priority, the Board stated that a design is "a unitary thing," and thus that when the design is changed it becomes a different design, and not subject to severance of any common subject matter for purposes of priority. The Board sought authority in *In re Salmon,* 705 F.2d 1579, 1582, 217 U.S.P.Q. 981, 984 (Fed.Cir.1983); *In re Blum,* 54 C.C.P.A. 1231, 374 F.2d 904, 907, 153 U.S.P.Q. 177, 180 (1967); and *In re Mann,* 861 F.2d 1581, 1582, 8 U.S.P.Q.2d 2030, 2031 (Fed.Cir.1988). These cases do not support the Board's conclusion. In *In re Salmon* the court held that an earlier filed design application showing a chair with a square seat did not describe a later claimed design for a chair with a circular seat; thus, the earlier was not a description of the later and could not provide priority as to the later. *In re Blum* related to the interpretation of dotted and broken lines in a design patent, upon which the CCPA had explained that all portions of a design "are material in that they contribute to the appearance which consti-

tutes the design." 374 F.2d at 907, 153 U.S.P.Q. at 180. *Blum* did not assess priority based on the presence or absence of dotted or broken lines. And in *In re Mann* the court held that the display of a table at a trade show was an on-sale event as to a patent on the table design; there was no issue of § 120 or § 112. While the Board relied on these cases to deny Mr. Daniels the benefit of the filing date of his earlier application, none of these cases holds or suggests that when a later design is in fact described in an earlier application the laws governing priority do not apply.

The Board was incorrect in holding that any change in the design defeats a priority claim as a matter of law. As for any application asserting a priority claim, § 120 requires that the subject matter for which priority is requested must be disclosed in accordance with the requirements of § 112. A wealth of precedent guides the application of this statute. Applying the guidance of precedent, as we have discussed, the later claimed subject matter is contained in the earlier application. The leaf ornamentation in the parent application, superimposed upon the design of the leecher itself, does not obscure that design, which is fully shown in the parent application drawings. On the correct law, it must be concluded that Mr. Daniels possessed the invention that is claimed in the continuation application, and that he is entitled to claim priority under § 120.

Mr. Daniels is entitled to the parent application's filing date for the subject matter of the continuation, thus obviating the rejection based on the intervening publication. The Board's decision is

*REVERSED.*