# United States Court of Appeals for the Federal Circuit

_____

**IN RE TIMOTHY S. OWENS, SHEILA M. KELLY, ROBERT M. LYNCH, IV, JASON C. CAMPBELL, AND PHILIP E. HAGUE.**

_____

2012-1261

_____

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences in Serial No. 29/253,172

_____

Decided: March 26, 2013

_____

PERRY J. SAIDMAN, Saidman DesignLaw Group, LLC, of Silver Spring, Maryland, argued for appellants. Of counsel on the brief was DAVID M. WEIRICH, The Procter & Gamble Company, of Cincinnati, Ohio.

WILLIAM LAMARCA, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor and LYNNE E. PETTIGREW, Associate Solicitor. Of counsel was SCOTT WEIDENFELLER, Associate Solicitor.

TRACEY-GENE G. DURKIN, Sterne, Kessler, Goldstein & Fox, P.L.L.C., of Washington, DC, for amicus curiae.

With her on the brief were DAVID K. S. CORNWELL, JON E. WRIGHT and JONATHAN M. STRANG.

———————————

Before PROST, MOORE, and WALLACH, *Circuit Judges.*

PROST, *Circuit Judge.*

Timothy S. Owens, et al. ("Owens") appeal a decision of the United States Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("Board"), *Ex parte Owens*, No. 2010-5622 (B.P.A.I. Dec. 1, 2011) ("Board Op."), affirming a rejection of his design patent application, U.S. Design Patent Application No. 29/253,172 (filed Feb. 2, 2006) ("'172 application"). For the reasons set forth below, we affirm.

I

The '172 application, which is the subject of this appeal, is a continuation of U.S. Design Patent Application No. 29/219,709 (filed Dec. 21, 2004) ("'709 application"). The '709 application claimed a design for a bottle with boundaries set forth in the figures below:



Fig. 1         Fig. 2         Fig. 3

'709 application Figs. 1–3. The '709 application ultimately issued as U.S. Design Patent No. D531,515 (issued Nov. 7, 2006) ("'515 patent"), and that issuance is not contested here.

Owens then filed the '172 application in 2006, seeking the benefit of the '709 application's 2004 priority date under 35 U.S.C. § 120. Owens conceded during prosecution that, if denied the earlier effective filing date, the '172 application would be unpatentable because he had sold bottles embodying his design more than one year before filing his continuation. Board Op. at 3-4.

The '172 application claimed certain design elements found on the top and side portions of the original bottle, as depicted in Figures 1 through 3:



Fig. 1          Fig. 2          Fig. 3

'172 application Figs. 1–3 (as amended Oct. 29, 2008). In particular, the '172 application claimed three design elements: (1) the small crescent-shaped area on the front and back of the bottle near the cap; (2) the narrow triangular areas along the bottle's "shoulders;" and (3) an upper portion of the bottle's pentagonal center panel. To indicate what portion of the center area was claimed, Owens bisected the top of his pentagonal panel with a broken line.

The examiner rejected the '172 application. The basis for the rejection was the addition of the broken line, which the examiner understood as defining an entirely new "trapezoidal"-shaped surface that was considered new matter:



this shape created
by the boundary
line considerd
new matter

Fig. 2

J.A. 162. The examiner found no evidence that Owens originally possessed such a trapezoidal region in the '709 application. As such, the examiner rejected the '172 application for lack of written description under 35 U.S.C. § 112, ¶ 1, and furthermore rejected the application as unpatentably obvious in view of the earlier-sold bottles under 35 U.S.C. § 103(a).

Owens appealed to the Board, which noted at the outset that the correctness of the examiner's § 103(a) rejection depended on whether the '172 application was entitled to the benefit of the '709 application's filing date. Board Op. at 3-4. That issue, in turn, hinged on whether the '709 application contained a written description sufficient to convey to an ordinary designer that Owens possessed the subject matter of the '172 application as of the earlier filing date. *Id.* at 4.

Addressing the latter question, the Board focused upon the difference between the parent and the continua-

tion's front panels—namely, the continuation's introduction of a broken line bisecting the parent's pentagonal front panel. Board Op. at 11. Like the examiner, the Board understood this to indicate that Owens had claimed previously undisclosed "trapezoidal sections occupying part, but not all, of the surface area of the front and back panels." *Id.* Accordingly, the Board affirmed the examiner's rejections.

Owens timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141.

## II

The statutory provision governing the effective filing date of the subject matter of continuing applications, 35 U.S.C. § 120, applies generally to design patents as well as utility patents. *See* 35 U.S.C. § 171 ("The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."). Entitlement to priority under § 120 is a matter of law which we review de novo. *In re Daniels*, 144 F.3d 1452, 1455 (Fed. Cir. 1998) (citing *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1419 (Fed. Cir. 1989) (en banc)).

To be entitled to a parent's effective filing date, a continuation must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1. 35 U.S.C. § 120; *Daniels*, 144 F.3d at 1456. Whether a claimed invention is supported by an adequate written description under § 112, ¶ 1, is a question of fact that we review for substantial evidence. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

The test for sufficiency of the written description, which is the same for either a design or a utility patent, has been expressed as "whether the disclosure of the application relied upon reasonably conveys to those

skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* In the context of design patents, the drawings provide the written description of the invention. *Daniels*, 144 F.3d at 1456; *In re Klein*, 987 F.2d 1569, 1571 (Fed. Cir. 1993) ("[U]sual[ly] in design applications, there is no description other than the drawings."). Thus, when an issue of priority arises under § 120 in the context of design patent prosecution, one looks to the drawings of the earlier application for disclosure of the subject matter claimed in the later application. *Daniels*, 144 F.3d at 1456; *see also Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

## III

The subject of this appeal is the broken line that Owens introduced in his continuation application. The parties agree that the parent application discloses no boundary that corresponds (either explicitly or implicitly) to this newly-added broken line. However, the parties also agree that a design patentee may, under certain circumstances, introduce via amendment a straight broken line without adding new matter, even "[w]here no [corresponding] boundary line is shown in a design application as originally filed." MPEP § 1503.02.

The parties refer to these broken-line boundaries as "unclaimed boundary" lines because the lines are "not intended to form part of the claimed design" and do "not exist in reality in the article embodying the design." *Id.* Rather, when an unclaimed boundary line is introduced via amendment or continuation, it is "understood that the claimed design extends to the [unclaimed] boundary but does not include the [unclaimed] boundary." *Id.*

In other words, when an unclaimed boundary line divides a previously claimed area, it indicates that the applicant has disclaimed the portion beyond the boundary

while claiming the area within it. Where permissible, unclaimed boundary lines allow the patentee to adjust his patent coverage and encompass embodiments that differ slightly but insignificantly from the originally-filed design. However, like all amendments made during prosecution, these lines must comply the written description requirement to receive the benefit of priority under § 120.[1]

## IV

Bearing all of this in mind, we turn to the merits of Owens's case. The Board rejected the '172 application because it believed that, as a prerequisite to patentability, Owens needed to demonstrate prior possession of a bottle with a trapezoidal section occupying part, but not all, of the surface area of the center-front panel. Owens made no such showing before the Board, nor does he do so on appeal.

Instead, Owens attacks the very notion that his continuation claims a trapezoidal-shaped area at all. Owens insists that in order to claim a new design element, one must first claim a new boundary. Yet his newly-introduced broken line is, as all parties agree, "unclaimed." Accordingly, he believes the Board applied the wrong written description test to his case, one which erroneously treated his unclaimed boundary as though it was claimed.

---

[1] In initial design applications, it is appropriate to disclaim certain design elements using broken lines, provided the application makes clear what has been claimed. *See In re Zahn*, 617 F.2d 261, 266-67 (CCPA 1980); *In re Blum*, 374 F.2d 904, 907 (CCPA 1967). These so-called "environmental" lines are not at issue in this case, because they do not implicate § 120.

Owens suggests a more relaxed written description test for these circumstances based upon his interpretation of *In re Daniels*. In that case, we held that a continuation application claiming a design for a container was entitled to the effective filing date of its parent application, which claimed the same container decorated with an ornamental floral design. *Daniels*, 144 F.3d at 1454-55. We reasoned that the underlying container claimed in the continuation was "clearly visible in the earlier design application, demonstrating to the artisan viewing that application that Mr. Daniels had possession at that time of the later claimed design of that article." *Id.* at 1456-57.

Owens believes his amendment satisfies the *Daniels* test because all portions of his pentagonal front panel were "clearly visible" in the '709 application. His argument is premised on the notion that an applicant who has possession of an entire area in a parent application must likewise possess all parts of the area. He therefore believes he should now be permitted to disclaim any portion of his original design in a continuation and still survive the written description test.

Owens misconstrues our holding in *Daniels*. The patentee in *Daniels* did not introduce any new unclaimed lines, he removed an entire design element. It does not follow from *Daniels* that an applicant, having been granted a claim to a particular design element, may proceed to subdivide that element in subsequent continuations however he pleases.

Moreover, the written description question does not turn upon what has been disclaimed, but instead upon whether the original disclosure "clearly allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented what is *claimed*." *Ariad*, 598 F.3d at 1351 (second alternation in original) (emphasis added) (internal quotation marks omitted); *Daniels*, 144 F.3d at 1456 ("The [written description] inquiry is simply to determine

whether the inventor had possession at the earlier date of what was claimed at the later date."). In this case, Owens's parent application discloses a design for a bottle with an undivided pentagonal center-front panel, whereas the continuation claims only the trapezoidal top portion of that center-front panel. Therefore, the question for written description purposes is whether a skilled artisan would recognize upon reading the parent's disclosure that the trapezoidal top portion of the front panel might be claimed separately from the remainder of that area. *Ariad*, 598 F.3d at 1351.

The Board answered this factual question in the negative, finding that nothing in the parent application's disclosure suggested anything uniquely patentable about the top portion of the bottle's front panel. This finding is supported by substantial evidence because the parent disclosure does not distinguish the now-claimed top trapezoidal portion of the panel from the rest of the pentagon in any way. Indeed, Owens did not argue to the contrary before the Board, nor does he do so on appeal. Accordingly, we must affirm the Board's decision.

V

Lastly, we turn to a question raised implicitly in Owens's appeal and explicitly in amicus briefing—whether, and under what circumstances, Owens *could* introduce an unclaimed boundary line on his center-front panel and still receive the benefit of § 120.

The Manuel of Patent Examining Procedure ("MPEP") provides some direction in this regard, saying that unclaimed boundary lines "may" be acceptable when "connecting the ends of existing full lines." MPEP § 1503.02. Were this the rule, it might be acceptable for Owens to bisect his front panel with a broken line along the pentagon's widest point. However, it seems that such a boundary would simply outline a larger trapezoidal area, and so

the resulting claim would suffer from the same written description problems as the '172 application.

Prior PTO practice offers similarly ambiguous guidance. For instance, the amicus brief noted certain past allowances that seemingly contradict both the MPEP and the PTO's rejection of the Owens continuation. *Compare* the '702 application, *and* the '172 application, *with* U.S. Patent No. D545,954 (issued July 3, 2007) (parent design patent claiming humidifier), *and* U.S. Patent No. D569,958 (issued May 27, 2008) (continuation allowed despite having areas of humidifier bisected with unclaimed boundary lines).[2]

In our view, the best advice for future applicants was presented in the PTO's brief, which argued that unclaimed boundary lines typically should satisfy the written description requirement only if they make explicit a boundary that already exists, but was unclaimed, in the original disclosure. Although counsel for the PTO conceded at oral argument that he could not reconcile all past allowances under this standard, he maintained that all future applications will be evaluated according to it.

This rule comports with our understanding of how unclaimed boundary lines generally should affect entitlement to an earlier filing date under § 112, ¶ 1, and § 120. Its implications for Owens's case should be obvious.

## CONCLUSION

For the reasons set forth above, we affirm the Board's rejection of the '172 application.

**AFFIRMED**

---

[2] These humidifier patents are presented for comparison's sake only. We have not considered, and express no opinion upon, whether they properly issued.