**TRANSCO PRODUCTS INC., Plaintiff,**

v.

**PERFORMANCE CONTRACTING, INC. and Performance Contracting Group, Inc., Defendants.**

No. 89 C 8001.

United States District Court, N.D. Illinois, E.D.

May 12, 1992.

Robert E. Wagner, Roger H. Stein, Richard C. Himelhoch, Wallenstein Wagner & Hattis, Chicago, Ill., for plaintiff.

John S. McCambridge, Charles S. Bergen, Darrell J. Graham, Grippe & Elden, Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In this patent infringement action, Transco Products Inc. ("Transco") sues Performance Contracting, Inc. and Performance Contracting Group, Inc. (collectively "Performance Contracting," treated as a singular noun), seeking a declaratory judgment of invalidity, noninfringement and unenforceability of United States Patent No. 4,009,735 (the "Pinsky patent") owned by Performance Contracting, and also charging Performance Contracting with infringement of Transco's United States Patent No. 3,941,159 (the "Toll patent"). Performance Contracting responds with the expected counterclaims, seeking a declaratory judgment of invalidity and unenforceability of the Toll patent and charging Transco with infringement of the Pinsky patent.

Performance Contracting now moves for summary judgment under Fed.R.Civ.P. ("Rule") 56 on the issues of invalidity and noninfringement of the Toll patent.[1] For the reasons stated in this memorandum opinion and order, Performance Contracting's motion is granted in part and denied in part.

### Facts [2]

On October 2, 1974 Gordon Pinsky ("Pinsky") filed a continuation of his original October 24, 1973 application with the United States Patent Office covering a pipe insulation design. On March 1, 1977 the Pinsky "Thermal Insulation" patent issued, containing these four claims (D.Ex. C–1, col. 4, lines 7–28):

1. Readily removable and replaceable rewettable thermal insulation for use on vessels and piping within reactor containment areas of nuclear power plants comprising high temperature resistant mineral fiber or glass fiber encapsulated within rewettable, high temperature resistant, asbestos free glass cloth held in place with a plurality of spaced quick release and engage fasteners, wherein the glass cloth can withstand repeated wettings from spray systems with the reactor containment areas of nuclear power plants and wherein the fasteners are two woven nylon, hook and loop mating strips, wherein the glass cloth has a finish of a leachable, organic silicate carried in a fatty and mineral oil vehicle.

2. Thermal insulation according to claim 1 wherein the encapsulated fiber is a fine fiber and is in the form of tangled or felted mats.

3. Thermal insulation according to claim 2 wherein the mats are quilted.

---

1. Performance Contracting has not discussed the issue of unenforceability in its motion for summary judgment. Because of the nature of its "Supplemental Motion for Complete Summary Judgment on the Toll Patent," Performance Contracting appears to have dropped the unenforceability issue.

2. Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant, in this case Transco (*Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991) (citation omitted)). This District Court's General Rule 12(m) and 12(n) require factual statements in support of and in opposition to Rule 56 motions, and both sides have tendered such statements (respectively cited "D. 12(m) ¶—" and "P. 12(n) ¶—").

4. Thermal insulation according to claim 1 wherein the strips comprise a hook strip covered with stiff little hooks and a loop strip covered with tiny, soft loops.

On October 31, 1974, about a year after Pinsky's original filing, Wolcott Toll ("Toll") filed a patent application for his own insulation design. On March 2, 1976 the Toll "Insulation Assembly for a Tubular Conduit Pipe" patent issued, containing these two claims (D.Ex. A col. 3, line 26 to col. 4, line 30):[3]

1. An insulation assembly for a tubular conduit pipe having an outer surface, the insulation assembly comprising:

[1] a length of compressible insulation material having inside and outside surfaces and having first and second side edges;

[2] a layer of moisture and vapor impervious fabric coextensive in length with the length of compressible insulation material, the fabric having inner and outer surfaces;

[3] the layer of fabric being of a width exceeding that of the insulation material;

[4] the layer of fabric having an interior end coincident with the first side edge of the insulation material, and having an exterior end which extends outwardly of the second side edge of the insulation material;

[5] a strip of fastening material having a series of minute hook-like projections thereon fixedly secured to the inner surface of the fabric on said interior end thereof;

[6] a strip of hirsute material fixedly secured to the outer surface of the fabric on said interior end thereof; and

[7] the inside surface of the insulation material contacting the outer surface of the conduit pipe and being of a width from side-to-side such that its respective edges contact one another and the stripe of fastening material and hirsute material being radially aligned when the edges are in contact, said strips being adherent to one another.

2. The invention of claim 1, and:

a line of stitching extending through said fastening means having said hook-like projections and said exterior end of said fabric.

When Pinsky filed his application he was an employee of Owens–Corning Fiberglas ("Owens"). Pinsky is now employed by Performance Contracting, which purchased the Owens product line produced under the Pinsky patent in 1987 (D.Ex. C ("Pinsky Aff.") ¶ 1). In its current form, marketed under the trademark "Nukon,"[4] Performance Contracting's product differs from the version depicted in the Pinsky patent in several details. For example, the hook and loop mating strips (Velcro) are placed longitudinally along the side edge of the insulation blanket rather than circumferentially (Pinsky Aff. ¶ 7, D.Exs. C–1, C–2, C–3), and the Nukon product now comes with an optional stainless steel jacket that is not the subject of any of the Pinsky patent claims (D.Ex. C–3 at 3).

In three letters dated February 13, March 8 and September 11, 1989 Performance Contracting notified Transco that it believed Transco was infringing the Pinsky patent (Complaint Exs. B, C, D). Transco then filed its October 25, 1989 declaratory judgment Complaint targeting the Pinsky patent. On November 13, 1989 Transco purchased the Toll patent (D.Ex. B. (Toll Dep.) 61–62, D.Ex. D) and then amended its Complaint on January 30, 1990 to include charges that Performance Contracting's Nukon product infringed the Toll patent.

The NUKON® product has changed little since its original development, and has remained the same since this lawsuit was filed. At the risk of imprecision but for simplicity's sake, this opinion will treat "Nukon" as also describing the original reduction to practice of the device later covered by the Pinsky patent.

---

**3.** Claim 1 does not contain the bracketed subclaim numbers, which this Court has inserted for ease of later reference.

**4.** It is unclear from the Pinsky affidavit whether the Nukon trademark was applicable to the product from the very beginning. But his Aff. ¶ 2 says:

As already stated, Performance Contracting's summary judgment motion seeks resolution of two issues:

1. whether the Toll patent is invalid under 35 U.S.C. § 102(g) [5] because of the prior invention embodied in the Nukon product; and

2. whether the Nukon product infringes the Toll patent.

Those questions will be dealt with in turn.

### Invalidity

■ Performance Contracting first argues that the Toll patent is invalid under Section 102(g) as anticipated, because the invention reduced to practice in the Nukon product and described in the Pinsky patent antedated the claimed invention shown in the Toll patent. Section 282 requires that patents be presumed valid, and Performance Contracting bears the burden of proving invalidity by clear and convincing evidence (*Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 829 (Fed.Cir. 1991)). Performance Contracting has failed to meet that burden.

Section 102(g) provides:

A person shall be entitled to a patent unless—

\*      \*      \*      \*      \*      \*

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

Relatedly, Section 282 reads in relevant part:

A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

\*      \*      \*      \*      \*      \*

(2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability....

■ As with all types of Section 102 anticipation, establishing invalidity under Section 102(g) requires the prior reduction to practice of *the same claimed invention* (*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1379 (Fed.Cir.1986)). In other words, *id.*:

It is axiomatic that for prior art to anticipate under § 102 it has to meet every element of the claimed invention, and that such a determination is one of fact.

So when D.Mem. 12 says "that which will infringe if later, will anticipate, if earlier," that statement of the "classic test" of anticipation has been modified under the current statute. Instead, as *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed.Cir.1987) (emphasis in original) has reframed the old adage:

That which would *literally* infringe if later in time anticipates if earlier than the date of invention..

■ Thus the Pinsky patent embodying the original Nukon product could not have anticipated the Toll patent, for it does not contain every element of that patent. As just one example of the differences (which are more thoroughly discussed in the next section of this opinion) it lacks Toll's claim 1 element [2]: "a layer of moisture and vapor impervious fabric" (D.Ex. A col. 4, line 1). To the contrary, claim 1 of the Pinsky patent calls for "rewettable ... glass cloth" (D.Ex. C–1 col. 4, lines 11–12)—hence its embodiment in the Nukon product uses "fibrous glass fabric" (D.Ex. 3 at 3), which is not impervious (D. 12(m)

---

**5.** All further references to Title 35's provisions will take the form "Section—."

and P. 12(n) ¶ 9). Nor is that difference a matter of mere happenstance, because as Pinsky Aff. ¶ 5 emphasizes:

> The fiberglass cloth is woven so that it is porous. It is necessary for it to be porous. If it were not porous, then the NUKON® product would not pass the sump blockage requirements for nuclear power plants. It is necessary that liquid be able to flow through the entire NUKON® blanket. That is, the NUKON® blanket is not moisture and vapor impervious, nor is the fiberglass cloth component of it moisture and vapor impervious, and if it were moisture and vapor impervious it would not be acceptable for insulation blankets in containment areas of nuclear power plants.

Because the Pinsky patent therefore could not have fully anticipated the Toll patent under Section 102(g) (or any other Section 102 subsection), the parties' factual dispute as to the dates of conception and reduction to practice of the two inventions is not material. Performance Contracting has failed to establish that the Toll patent is invalid as anticipated.

### Noninfringement

■ To establish infringement Transco must show that every limitation of its claims is incorporated either literally or by a substantial equivalent in the Nukon product (*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir.1991)). Transco bears the burden of proving infringement by a preponderance of the evidence (*id.*). Literal infringement requires a showing that each claim element of the Toll patent is matched exactly by a corresponding Nukon element (*Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed.Cir.1991)).

■ Transco and Performance Contracting agree that there are several differences between the Toll patent and the Nukon product:

1. As discussed in the preceding section of this opinion, claim 1 limitation [2] of the Toll patent states that the insulation material is covered with "a layer of moisture and vapor impervious fabric." By contrast, the Nukon product is covered with fiberglass cloth, which is not moisture or vapor impervious (D. 12(m) and P. 12(n) ¶¶ 9, 11).

2. Claim 1 limitation [3] of the Toll patent describes "the layer of fabric having an interior end coincident with the first side edge of the insulation material, and having an exterior end which extends outwardly of the second side edge of the insulation material" (D.Ex. A col. 4, lines 7–11). In the Nukon product the fabric completely surrounds the insulation material (D. 12(m) and P. 12(n) ¶¶ 12, 13).

3. In the Toll patent the insulation material touches the pipe, while in the Nukon product the outer fabric (which completely surrounds the insulation material) touches the pipe (D. 12(m) and P. 12(n) ¶¶ 14, 15).

Because of those differences Transco concedes that it cannot establish literal infringement (P.Mem. 3). It urges at length, however, that the Nukon product infringes the Toll patent under the doctrine of equivalents (*id.* at 3–26). Under that doctrine infringement may be found even in the absence of literal infringement if the accused device performs substantially the same function in substantially the same way to accomplish substantially the same result as the patented device (*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1325 (Fed.Cir. 1991)).

■ To satisfy the "substantially the same way" prong of the *Graver Tank* test, a patentee must show that all limitations of the patent's claims are satisfied at least equivalently in the accused device (*Laitram*, 939 F.2d at 1539). For that purpose *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538–39 (Fed.Cir.1991), quoting *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed.Cir.1985), explains:

> "It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial

equivalent in the accused device." There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device.

Unfortunately the Federal Circuit has provided less than crystal-clear guidance on how equivalency to claim limitations is to be established. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1260 (Fed.Cir.1989) reviewed a district court that had:

> resolved the question by comparison of the function/way/result of the substitution with the function/way/result of the limitation in the context of the invention; that is, the court made a subsidiary analysis comparable to the overall function/way/result analysis mandated for determining infringement of the claim under the doctrine of equivalents.

*Corning Glass, id.* found that approach "a helpful way to approach the problem and entirely in accord with the analysis actually made in *Graver Tank*," and that it was supported by Federal Circuit precedent.[6]

Yet *Malta*, 952 F.2d at 1326 has more recently stated:

> [W]hile comparison of function/way/result is an acceptable way of showing that structure in an accused device is the "substantial equivalent" of a claim limitation, it is not the only way to do so.... How equivalency to a required limitation is met necessarily varies from case to case due to many variables such as the form of the claim, the nature of the invention defined by it, the kind of limitation that is not literally met, etc.

Hence it seems that equivalency may be shown by a method of analysis other than the function/way/result approach. But no clue is given as to the precise nature of any such alternative analysis.

▪ In this case, however, application of the traditional function/way/result analysis on the level of claim limitations is clearly appropriate. In attempting to meet its

burden on the issue of equivalency, Transco has itself argued the equivalency of claim limitations in terms of their function/way/result (see, e.g., P.Mem. 6, 10, 22–24). Thus if this Court finds that one or more of the Nukon elements is or are not equivalent to those in the Toll patent under that analysis, Transco will have failed to meet its burden. In sum, if the Nukon product is nonequivalent to even one claim limitation, it does not infringe the Toll patent and this Court's analysis will be complete (*Laitram*, 939 F.2d at 1535).

▪ It is enough then to focus again on Toll's claim 1 limitation [2] calling for "a layer of moisture and vapor impervious fabric." As already discussed, the Nukon product is covered with fiberglass cloth, which is *not* vapor or moisture impervious. Transco contends that despite the Nukon product's use of permeable fiberglass cloth, the moisture and vapor impervious limitation is met by the outer stainless steel jacket that is an optional component of the Nukon product (see D.Ex. 3 at 3). But that contention fails even with the benefit of all factual inferences in Transco's favor, for the combination of those two Nukon elements—the inner fiberglass jacket covered by the outer stainless steel jacket—does not perform a similar function in a similar way to achieve a similar result as the single Toll element. On the contrary, that combination produces a difference in the product's overall function, way and result.

▪ It is basic to the law of patents that Toll's claim limitation must be interpreted not only in light of the claim itself but also in light of the patent's specification and its prosecution history (*Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed.Cir.1991)). Here is how the Toll patent describes its purpose in its "Summary of Invention" (D.Ex. A col. 1, lines 37–46):

> The insulation covering provided by this invention is usable in numerous environ-

**6.** To that end *Corning Glass, id.* at 1260–61 cited *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1579–80 (Fed.Cir.1984); *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1531–35, (Fed.Cir.1987); *Ray-* *theon Co. v. Roper Corp.*, 724 F.2d 951, 962 (Fed.Cir.1983); and *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1115 (Fed.Cir.1983).

ments and is principally directed to the provision of an insulation material which is easily and quickly applied, and one which is readily adapted by virtue of its inherent flexibility to use in those situations where irregular forms are to be insulated.

The insulating material is applied as a one man operation, and this effects substantial reduction in labor costs by comparison to prior art methods.

Toll made a like point in his application amendment when he distinguished his invention from the prior art Kemper patent, which contained several pieces, including an outer steel jacket (P.Ex. FF at T205, 206): [7]

> The purpose of the construction shown in this [Kemper] patent is to provide a strong insulation covering which is resistant to damage and is obviously intended for use where heavy loads are applied to the pipe. It is equally clear that the application of this insulation to a pipe would require the services of several persons since it would not be possible to apply the insulation to a pipe without assistance.
>
> Applicant's invention as defined in Claims 1 and 5 consists of a single portion of insulation material which is compressible. Applied to this fixedly is a fabric layer which has an overlapping end section to extend over itself when placed about a pipe. Secured to the overlap portions are strips of fastening material so that, as the insulation is placed on the pipe, it may be readily and quickly positioned.
>
> *     *     *     *     *     *
>
> Considering the references, including the references cited as of secondary interest, it appears that, uniquely in the art, appli-

cant provides an insulation covering for a pipe which may be applied to the pipe quite easily and by a single individual. Also, applicant provides the only construction which may be readily removed and re-applied.

Those statements make it plain that the function of Toll's water impervious fabric is not merely to achieve waterproofing. Instead the goal is to achieve waterproofing by use of a product that can at the same time be quickly and easily installed and removed by one person. By integrating the waterproofing element into the fabric covering, Toll was able to create a waterproof product that consists of only a single insulating component.

■ While a finding of equivalence is not necessarily foreclosed by the fact that an accused device requires more than one component to perform the function achieved by a single component in the patented device (*Intel Corp.*, 946 F.2d at 832, citing and quoting *Corning Glass*, 868 F.2d at 1259), here the very existence of two components is not incidental but critical. Toll has emphasized that achieving the designated function through the use of a single element was itself an important aspect of his design. Although Performance Contracting also advertises that its product is easily installed (D.Ex. C–3 at 2, 4, 5), its additional metal jacket unquestionably increases the complexity of, and the time required for, application. Toll said as much to the Patent Office in distinguishing the *earlier* Kemper use of components including a metal jacket to cover insulation, and Transco is scarcely in a position to urge the contrary as to Performance Contracting's *later* use of a metal jacket alone to the same end. Hence the later combina-

---

**7.** This reliance on the Toll prosecution history for purposes of interpreting its claim limitations should not be confused with Performance Contracting's assertion of prosecution history estoppel. Light cast by the prosecution history on the meaning of claim limitations does not necessarily mean that the history estops Transco from asserting the range of equivalents. As *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 862 (Fed.Cir.1991) (citations omitted) has stated:

> There is a clear line of distinction between using the contents of the prosecution history to reach an understanding about disputed claim language, and the doctrine of prosecution history estoppel which "estops" or limits later expansion of the protection accorded by the claim to the patent owner under the doctrine of equivalents when the claims have been purposefully amended or distinguished over relevant prior art to give up scope.

tion of porous-fabric-plus-steel-jacket is not equivalent to the Toll impervious fabric, for even though it may achieve a similar result, it does not do so by performing a similar function in a similar way as defined by Toll himself.[8]

This analysis is squarely supported by *Unique Concepts*, which dealt with border pieces used to attach fabric wall covering to a wall. There the patented device comprised "linear border pieces and right angle corner border pieces" (939 F.2d at 1560), while the accused device consisted of "two linear pieces which are each mitered, *i.e.*, cut at a 45 degree angle, and then placed together to form a right angle" (*id.* at 1561). Both the district court and the Federal Circuit held there was no infringement under an equivalency analysis, because the function of the patent's preformed corner pieces was not only to form corners but also to do so in a way that could be easily used by "do-it-yourselfers." *Unique Concepts, id.* at 1564 (emphasis in original) quoted the district court:

> The accused device has a *different and complicated way* of doing what the right-angle piece does in the patented device. It is a lot simpler for the do-it-yourselfer to use the preformed right-angle pieces of the patented device and far more difficult to create corners by the mitered means used and the function of the accused device.

That led to the conclusion that the accused device performed the function of creating corners in a substantially different way than did the patented device.

In the same way, the more complicated and difficult-to-install combination Nukon product differs from the Toll patent. As *Perkin–Elmer*, 822 F.2d at 1533 has stated:

To be a "substantial equivalent," the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed.

Because the porous-fabric-plus-steel-jacket combination does indeed "substantially change the way in which the function" of the Toll patent is performed, it is not equivalent to the Toll impervious fabric. To put it another way, "[i]t is only when the changes are so insubstantial as to result in 'a fraud on the patent' that application of the equitable doctrine of equivalents becomes desirable" (*Slimfold Mfg. Co. v. Kinkead Industries, Inc.*, 932 F.2d 1453, 1457 (Fed.Cir.1991), citing *Graver Tank*, 339 U.S. at 608, 70 S.Ct. at 856)—and that is surely not the case here.

■ This opinion's finding of nonequivalence is further supported by the well-established principle that the doctrine of equivalents must be narrowly applied in crowded fields of invention (*Slimfold*, 932 F.2d at 1457; *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 987 (Fed.Cir.1989)). Such narrow application is certainly called for in this instance. Fully 16 relevant prior art patents are listed in the Toll patent, most of them describing pipe insulation systems that differ from one another in only relatively minor respects (see D.Ex. A col. 1, lines 20–32, P.Ex. LL).

Because Performance Contracting's porous-fabric-plus-steel-jacket combination is not equivalent to Toll's impervious fabric, this opinion need not also address Performance Contracting's argument based on prosecution history estoppel. Nor does it need to consider whether the asserted

---

8. There is a special element of poetic justice in employing Toll's statement of purpose to negate equivalence between the teaching of his patent and the Nukon device with the optional steel jacket. Performance Contracting's own product brochure makes it plain that the function of that jacket is *not* to provide imperviousness to moisture, but rather to prevent physical damage (D.Ex. C–3 at 2, 3, 6). Thus this opinion has been required to look not to the intended *purpose* of that added element, but instead to its

quite incidental *result* of impermeability, to give Toll even a shot at proving infringement under the doctrine of equivalents. As it turns out, the result reached here (in part by viewing Toll's claims in light of the purpose stated by the inventor) is the same outcome that would have been called for if this Court had been guided by the purpose (and not merely the effect) of the assertedly infringing Nukon combination device.

range of equivalents is prohibited by the prior art.

In addition, because infringement under the doctrine of equivalents cannot be found if even one claim limitation is not matched by an equivalent in the accused device, this opinion need not consider the other claimed differences between the two devices.[9] There is no question of material fact to block the ruling that the Nukon product does not infringe the Toll patent as a matter of law.

### Conclusion

Performance Contracting has not shown that the Pinsky patent anticipated the Toll patent for purposes of Section 102(g). That means that Performance Contracting has failed to establish the invalidity of the Toll patent, so that its motion for summary judgment is denied in that respect. As for the issue of infringement, the Nukon product does not literally infringe the Toll patent, nor has Transco established infringement under the doctrine of equivalents. Because there is no question of material fact as to infringement, Performance Contracting's motion is granted on that issue as a matter of law. This Court declares that the Nukon product does not infringe the Toll patent.

As noted at the outset of this opinion, the current rulings are not fully dispositive of this action. This Court has already approved a final pretrial order establishing the ground rules for trial of the remaining claims. To enable the litigants to review this opinion and to evaluate the now-anticipated length of that trial, a status hearing is set.

---

**9.** Although this Court expresses no ruling on the significance (if any) of those other asserted differences, the distinct impression that is conveyed by the parties' agonizingly nit-picking arguments on those items is that of the patent lawyers' equivalent of the theological controversy over how many angels can dance on the head of a pin—a different type of doctrine of equivalents. Maybe the old "flash of creative genius" standard, articulated for the Supreme Court by Justice Douglas in *Cuno Engineering Corp. v. Automatic Devices Corp.*, 314 U.S. 84, 91, 62 S.Ct. 37, 40–41, 86 L.Ed. 58 (1941), was not so overly demanding after all—but Congress has decreed otherwise in Section 103 (see *Graham v. John Deere Co.*, 383 U.S. 1, 15 & n. 7, 86 S.Ct. 684, 692 & n. 7 (1966)), and this Court like the Court of Appeals for the Federal Circuit must continue to treat such lawyers' arguments with more seriousness than they may deserve.