**TRANSCO PRODUCTS INC.,**
Plaintiff–Appellee,

v.

**PERFORMANCE CONTRACTING, INC.**
**and Performance Contracting Group,**
**Inc., Defendants–Appellants.**

No. 93–1431.

United States Court of Appeals,
Federal Circuit.

Sept. 14, 1994.

---

Robert Edward Wagner, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL, argued for plaintiff-appellee. With him on the brief was Roger H. Stein.

Robert A. Vanderhye, Nixon & Vanderhye, P.C., Arlington, VA, argued for defendants-appellants.

Robert A. Armitage, Vinson & Elkins, L.L.P., Washington, DC, was on the brief for

amicus curiae, Biotechnology Industry Organization.

John T. Whelan, Chair, Bar Ass'n of the District of Columbia, Patent, Trademark & Copyright Section, Washington, DC, and Anthony W. Shaw, Burns, Doane, Swecker & Mathis, Alexandria, VA, were on the brief for amicus curiae, Bar Ass'n of The District of Columbia.

Before RICH, PLAGER, and SCHALL, Circuit Judges.

RICH, Circuit Judge.

Performance Contracting, Inc. and Performance Contracting Group, Inc. (collectively Performance) appeal the May 18, 1993, decision of the United States District Court for the Northern District of Illinois, *Transco Prods. Inc. v. Performance Contracting, Inc.*, 821 F.Supp. 537, 28 USPQ2d 1739 (N.D.Ill. 1993), holding by summary judgment claims 1–4 of U.S. Patent No. 4,009,735 (Pinsky patent) invalid on the basis of three violations of the best mode requirement of 35 U.S.C. § 112. The district court based two of these violations on Pinsky's failure to update his best mode disclosure upon filing a continuation application pursuant to 37 CFR § 1.60 (Rule 60). The district court based the third violation on Pinsky's failure to provide supplier/trade name information for a material recited in the claims and described in the specification.

Because the district court erred as a matter of law in holding that an applicant must update the best mode disclosure upon the filing of a continuing application containing no new matter, the district court's holding regarding the first two violations is reversed. In addition, because the district court improperly resolved a genuine issue of material fact on summary judgment to find the third violation, that part of the district court's holding is vacated and remanded for further proceedings in accordance with our discussion herein.

## BACKGROUND

### I. *The Pinsky Patent*

The Pinsky patent issued from a Rule 60 continuation application filed on October 2, 1974, which application claimed priority pursuant to 35 U.S.C. § 120 based on a parent application filed October 24, 1973. The Pinsky patent is directed generally to thermal insulation for vessels and piping within nuclear power plants. Fig. 1 of the Pinsky patent, which illustrates a pipe wrapped with thermal insulation according to the claimed invention, is set forth below together with both Fig. 2, which illustrates the thermal insulation with a portion of the glass fiber cloth facing removed, and Fig. 3, which illustrates the quick release fastener used for the thermal insulation:

Claim 1, the only independent claim in the Pinsky patent, reads as follows, with the numerals in brackets referring to elements illustrated in the figures:

Readily removable and replaceable re-wettable thermal insulation [2] for use on vessels and piping within reactor containment areas of nuclear power plants comprising high temperature resistant mineral fiber or glass fiber [12] encapsulated within rewettable, high temperature resistant, asbestos free glass cloth [14] held in place with a plurality of spaced quick release and engage fasteners [6], wherein the glass cloth can withstand repeated wettings from spray systems within the reactor containment areas of nuclear power plants and wherein the fasteners are two woven nylon, hook and loop mating strips [22, 24], wherein the glass cloth has a finish of a leachable, organic silicate carried in a fatty and mineral oil vehicle.[1]

## II. *District Court Proceedings*

Transco Products Inc. (Transco) began marketing thermal insulation for nuclear power plant containment areas as early as 1982. Performance notified Transco in three letters, dated February 13, March 8, and September 11, 1989, that Performance believed Transco was infringing the Pinsky patent. *Transco,* 821 F.Supp. at 541, 28 USPQ2d at 1741. In response, Transco filed suit on October 25, 1989, seeking a declaratory judgment of invalidity, non-infringement, and unenforceability of the Pinsky patent.[2] By counterclaim, Performance asserted the Pinsky patent against Transco, alleging that Transco's sale of insulation for nuclear power plant containment areas infringed claims 1–4.

In the litigation that followed, Transco filed a motion for summary judgment of non-infringement of the Pinsky patent, and Performance filed a cross-motion for summary judgment of infringement. The district court denied both of these motions. *Transco Prods. Inc. v. Performance Contracting, Inc.,* 813 F.Supp. 613 (N.D.Ill.1993). The district court, sua sponte, instructed the parties, however, to brief the issue of whether claims 1–4 of the Pinsky patent should be held invalid by summary judgment on the basis that the Pinsky patent fails to disclose the best mode of practicing the claimed invention. Following briefing, the district court issued the appealed decision holding the Pinsky patent invalid in view of three violations of the best mode requirement.[3]

The district court based the first two best mode violations on knowledge Pinsky allegedly had at the time of filing his continuation application, but did not have at the time of filing the corresponding parent application. The district court found that Pinsky knew at the time of filing his continuation application that the use of stainless steel hooks for the fasteners (6), as opposed to the disclosed nylon-type hooks, constituted the best mode for carrying out the claimed invention. The district court also found that Pinsky knew at the time of filing his continuation application that the claimed fasteners should be placed longitudinally on the insulation with respect to the pipe, as opposed to circumferentially.

Of particular relevance to our disposition of this case, the district court found, and Transco does not dispute, that Pinsky did not consider either of the foregoing to be the best mode of practicing the claimed invention as of the filing date of the parent application. The district court stated, however, that the

---

1. Dependent claims 2–4, the only other claims in the Pinsky patent, read:
   2. Thermal insulation according to claim 1 wherein the encapsulated fiber is a fine fiber and is in the form of tangled or felted mats.
   3. Thermal insulation according to claim 2 wherein the mats are quilted.
   4. Thermal insulation according to claim 1 wherein the strips comprise a hook strip covered with stiff little hooks and a loop strip covered with tiny, soft loops.

2. Although not in issue here, Transco subsequently amended its complaint charging Performance with infringement of U.S. Patent No. 3,941,159 (Toll patent), owned by Transco, and

Performance counterclaimed for a declaratory judgment of invalidity and unenforceability of the Toll patent. In a separate decision not appealed here, the district court granted a motion by Performance for summary judgment as to non-infringement of the Toll patent. *Transco Prods. Inc. v. Performance Contracting, Inc.,* 792 F.Supp. 594, 23 USPQ2d 1691 (N.D.Ill.1992).

3. The district court noted that Transco labeled its motion for summary judgment as "partial," but explained that its ruling ended the litigation in its entirety. *Transco,* 821 F.Supp. at 540 n. 2, 28 USPQ2d at 1740 n. 2.

filing date of Pinsky's continuation application controlled, because, according to the district court, an applicant must update the best mode disclosure upon each filing of a continuing application. *Transco*, 821 F.Supp. at 550, 28 USPQ2d at 1749. Accordingly, the district court held that Pinsky's failure to disclose this information in his continuation application was a violation of the best mode requirement.

Regarding the third violation, the district court found that Pinsky violated the best mode requirement by failing to disclose the commercial designation for a material that he described in the specification for use as the finished glass cloth (14). The district court found that Pinsky's description of the cloth was deficient and that Pinsky should have disclosed that the use of Burlington Industries' commercial 603A finished glass cloth constituted the best mode, since he knew this supplier/trade name information at the time of filing the parent application.

## ANALYSIS

### I. *Summary Judgment*

■ A motion for summary judgment is properly granted only when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). All factual inferences are to be resolved in favor of the non-movant, in this case Performance. *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260–61, 225 USPQ 697, 701 (Fed.Cir.1985).

■ In reviewing the district court's grant of summary judgment, we must make an independent determination as to whether the standards of Rule 56(c) have been met. Reversal is required if the district court improperly determined any genuine issue of material fact or erred in holding that Transco was entitled to judgment as a matter of law.

*McElmurry v. Arkansas Power & Light*, 995 F.2d 1576, 1578, 27 USPQ2d 1129, 1131 (Fed. Cir.1993).

### II. *Continuing Applications and the Best Mode Requirement*

#### A. *Continuing Applications*

Prior to analyzing the particulars of this issue, we believe it necessary to recognize that there are various types of "continuing" applications that one may file at the PTO. *See The Manual of Patent Examining Procedure* (MPEP), §§ 201.03–201.13 (1988); D. Chisum, *Patents*, § 13 (1985 rev.); P. Rosenberg, *Patent Law Fundamentals*, § 15.02[3] (1991). An applicant may file a continuation, divisional, or continuation-in-part (CIP) application of a prior application, all of which the PTO characterizes as "continuing" applications. *See MPEP* § 201.11. In general, a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application.

"Continuation" and "divisional" applications are alike in that they are both continuing applications based on the same disclosure as an earlier application. They differ, however, in what they claim. A "continuation" application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed. *See MPEP* § 201.07. A "divisional" application, on the other hand, is one carved out of an earlier application which disclosed and claimed more than one independent invention, the result being that the divisional application claims only one or more, but not all, of the independent inventions of the earlier application. *See MPEP* § 201.06. A "CIP" application is a continuing application containing a portion or all of the disclosure of an earlier application together with added matter not present in that earlier application. *See MPEP* § 201.08.[4]

4. Continuation and divisional applications may be filed under any one of 37 CFR §§ 1.53, 1.60, and 1.62, which provide different procedural benefits, whereas CIP applications may be filed only pursuant to 37 CFR §§ 1.53 and 1.62. Continuing applications filed pursuant to Rules 53 and 60 must be filed prior to the "patenting or abandonment of or termination of proceedings on" the earlier application on which it is based, whereas a continuing application filed pursuant to Rule 62 must be filed prior to "the payment of

The term "parent" is often used to refer to the immediately preceding application upon which a continuing application claims priority; the term "original" is used to refer to the first application in a chain of continuing applications. *See MPEP* §§ 201.04, 201.04(a).

The PTO has noted that the expressions "continuation," "divisional," and "continuation-in-part" are merely terms used for administrative convenience. *See MPEP* § 201.11. As explained more fully in section II.B. below, the bottom line is that, no matter what term is used to describe a continuing application, that application is entitled to the benefit of the filing date of an earlier application only as to common subject matter.

**B.** *Interplay of Section 120 and Section 112*

The district court held that an applicant must update the best mode disclosure upon filing any continuing application. The requirement that an applicant disclose the best mode for practicing the claimed invention is found in the first paragraph of section 112, which reads:

*The specification* shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and *shall set forth the best mode contemplated by the inventor of carrying out his invention.*

35 U.S.C. § 112, ¶ 1 (emphasis added).

■ On its face, section 112 does not distinguish between a parent application and continuing applications thereof. However, section 112 must be read in light of the other parts of Title 35, namely section 120, which governs the manner in which continuing applications are to be treated. Section 120 reads:

An application for patent for an invention disclosed in the *manner provided by the first paragraph of section 112* of this title in an application previously filed in the United States, or as provided by sec-

tion 363 of this title, which is filed by an inventor or inventors named in the previously filed application *shall have the same effect, as to such invention, as though filed on the date of the prior application,* if filed before the patenting or abandonment of or termination of proceedings on the first application or on *an application similarly entitled to the benefit of the filing date of the first application* and if it contains or is amended to contain a specific reference to the earlier filed application.

35 U.S.C. § 120 (emphasis added). In essence, "having the same effect" means having the benefit of the filing date of the earlier filed application.

■ When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary. *See Mansell v. Mansell,* 490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989); *In re Donaldson Co.,* 16 F.3d 1189, 1192–93, 29 USPQ2d 1845, 1848 (Fed.Cir.1994). The plain and unambiguous meaning of section 120 is that any application fulfilling the requirements therein "shall have the same effect" as if filed on the date of the application upon which it claims priority. The courts have repeatedly recognized this principle.

■ Section 120 appeared in the statutes for the first time in the Patent Act of 1952. Prior to 1952, continuing application practice was a creature of patent office practice and case law, and section 120 merely codified the procedural rights of an applicant with respect to this practice. *See Racing Strollers, Inc. v. TRI Indus., Inc.,* 878 F.2d 1418, 1421, 11 USPQ2d 1300, 1302 (Fed.Cir.1989); *In re Hogan,* 559 F.2d 595, 603, 194 USPQ 527, 535 (CCPA 1977); *In re Henriksen,* 399 F.2d 253, 258–260, 158 USPQ 224, 227–29 (CCPA 1968). Before section 120 was enacted, the Supreme Court noted that a continuing application and the application on which it is based are considered part of the same transaction constituting one continuous application. *Godfrey v. Eames,* 68 U.S. (1 Wall)

the issue fee, abandonment of, or termination of

proceedings" of the earlier application.

317, 325–26, 17 L.Ed. 684 (1864).[5] The legislative history of section 120 does not indicate any congressional intent to alter the Supreme Court's interpretation of continuing application practice. The Court of Customs and Patent Appeals (CCPA), a predecessor of this court, acknowledged that the state of the law regarding continuing application practice had not been changed by the enactment of section 120:

> The Supreme Court's explanation illuminates the meaning of "shall have the same effect" and clearly requires that we view appellants' applications as "parts of the same transaction" and "as constituting one continuous application" *for the continuing subject matter recited therein.*

*Hogan,* 559 F.2d at 604, 194 USPQ at 535 (emphasis added). Thus, an application is entitled to the benefit of the filing date of an earlier application as to common subject matter. *See Weil v. Fritz,* 572 F.2d 856, 865 n. 16, 196 USPQ 600, 608 n. 16 (CCPA 1978); *Wagoner v. Barger,* 463 F.2d 1377, 1380, 175 USPQ 85, 86 (CCPA 1972); *In re Van Langehoven,* 458 F.2d 132, 136, 173 USPQ 426, 429 (CCPA 1972); *In re Lukach,* 442 F.2d 967, 968, 169 USPQ 795, 797 (CCPA 1971); *In re Shaw,* 202 USPQ 285, 293 (Comm.Pat. 1978).

### C. Best Mode Requirement

■ By use of the language "in the manner provided by the first paragraph of section 112," section 120 speaks of the first paragraph of section 112 as a whole. Indeed, the CCPA has stated that:

symmetry in the law, and evenness of its application, require that § 120 be held *applicable to all bases for rejection,* that its words "same effect" be given their full meaning and intent.

*Hogan,* 559 F.2d at 604, 194 USPQ at 535 (emphasis added). *See also Racing Strollers,* 878 F.2d at 1419, 11 USPQ2d at 1301 ("This paragraph [first of § 112], therefore, is an integral part of § 120").

Section 120 thus does not exempt the best mode requirement from its reach, and therefore this court must accept the plain and precise language of section 120 as encompassing the same. Accordingly, the date for evaluating a best mode disclosure in a continuing application is the date of the earlier application with respect to common subject matter.[6] *Accord Sylgab Steel and Wire Corp. v. Imoco–Gateway Corp.,* 357 F.Supp. 657, 658–59, 178 USPQ 22, 23–24 (N.D.Ill. 1973); *Johns–Manville Corp. v. Guardian Indus. Corp.,* 586 F.Supp. 1034, 1065, 221 USPQ 319, 334 (E.D.Mich.1983), *amended,* 223 USPQ 974 (1984), *aff'd,* 770 F.2d 178 (Fed.Cir.1985) (TABLE).

■ We note by analogy the manner in which the best mode requirement has been examined in other contexts. It has been held that the appropriate date for determining compliance with the best mode requirement for a reissue application is the filing date of the original application and not that of the reissue application. *Dow Chemical Co. v. American Cyanamid Co.,* 615 F.Supp. 471, 482, 229 USPQ 171, 179 (E.D.La.1985), *aff'd,*

---

5. The PTO also recognized this aspect of continuing application practice prior to enactment of section 120. *See Ex Parte Hall,* 1920 C.D. 56, 57; 277 O.G. 395, 395 (1920) ("A continuing application is one filed subsequently to another, while the prior application is pending, disclosing all or a substantial part of the subject-matter of the prior application and containing claims to subject-matter common to both applications, both being filed by the same inventor or his legal representative."); 2 *Walker on Patents* § 184, p. 873, Deller's Ed. (1937).

6. However, as mentioned earlier, a continuing application is entitled to rely on the filing date of an earlier application only with respect to subject matter common to both applications. The PTO acknowledges this principle in its discussion of CIP applications in the MPEP:

> Any claim in a continuation-in-part application which is directed *solely* to subject matter adequately disclosed under 35 U.S.C. 112 in the parent application is entitled to the benefit of the filing date of the parent application. However, if a claim in a continuation-in-part application recites a feature which was not disclosed or adequately supported by a proper disclosure under 35 U.S.C. 112 in the parent application, but which was first introduced or adequately supported in the continuation-in-part application such a claim is entitled only to the filing date of the continuation-in-part application.

> *MPEP* § 201.11. *See* P.J. Federico, "Commentary on the New Patent Act," 35 U.S.C.A. § 1 (1954), pp. 31–33.

816 F.2d 617, 2 USPQ2d 1350 (Fed.Cir.1987), *cert. denied,* 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987). In a similar vein, it has been held that, in the context of a priority claim under 35 U.S.C. § 119, one looks to the foreign application and its filing date to determine the adequacy of the best mode disclosure and not to the filing date of the corresponding U.S. application.[7] *Tyler Refrigeration Corp. v. Kysor Indus. Corp.,* 601 F.Supp. 590, 605, 225 USPQ 492, 504 (D.Del. 1985), *aff'd,* 777 F.2d 687, 227 USPQ 845 (Fed.Cir.1985). *See also Standard Oil Co. v. Montedison, S.p.A.,* 494 F.Supp. 370, 388, 206 USPQ 676, 696 (D.Del.1980), *aff'd,* 664 F.2d 356, 212 USPQ 327 (3d Cir.), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982). We see no reason for treating the best mode issue any differently under section 120.

Contrary to Transco's assertions, public policy does not demand that the public receive a new best mode disclosure in all continuing applications. Such a rule would subvert the patent system's goal of promoting the useful arts through encouraging early disclosure. An inventor's motivation to file early and then continue to test and improve upon his invention would be stifled by the knowledge that any progress that he made could preclude him from enjoying the procedural benefits available through continuing application practice. If he later developed better modes for practicing an invention adequately disclosed in an earlier filed application, he would nonetheless have to redraft his disclosure to add these later-developments upon filing a continuing application.

The district court's comments regarding continuing application practice and new matter illustrate a misunderstanding of patent law and patent office practice. The subject matter that the district court believes Pinsky should have disclosed in his continuation application would clearly have constituted "new matter" pursuant to 35 U.S.C. § 132, 37 C.F.R. § 1.118, and MPEP §§ 608.04(a)–(c) and 706.03(o). It must be understood that the introduction of a new best mode disclosure would constitute the injection of "new matter" into the application and automatically deprive the applicant of the benefit of the earlier filing date of the parent or original application for any claim whose validity rests on the new best mode disclosure.

Moreover, imagine the practical implications if an applicant were forced to update the best mode disclosure upon each filing of a continuing application. Under current practice, the filing of many, if not most, continuing applications is merely a matter of form not requiring any input from the inventor.[8] The best mode requirement, however, focuses on what the inventor knows. Thus, under the district court's holding, an attorney would necessarily be forced to discuss with an inventor any progress that has been made regarding the invention each time that a continuing application is filed, even when it is being filed merely for administrative convenience. This result would be completely contrary to current continuing application practice.

Furthermore, given that much of continuing application practice stems from actions taken by the PTO, it would be unfair to impose upon applicants an additional best mode burden. For example, when confronted with an application claiming more than one independent and distinct invention, an examiner often will impose a restriction requirement pursuant to 35 U.S.C. § 121 to ease the burden of examining that subject matter, thus forcing an applicant to file one or more divisional applications. In addition,

---

**7.** In *In re Gosteli,* 872 F.2d 1008, 1011, 10 USPQ2d 1614, 1616 (Fed.Cir.1989), this court stated:

Section 119 provides that a foreign application "shall have the same effect" as if it had been filed in the United States. 35 U.S.C. § 119. Accordingly, if the effective filing date of what is claimed in a United States application is at issue, to preserve symmetry of treatment between sections 120 and 119, the foreign priority application must be examined to ascertain if it supports, within the meaning of section 112, ¶ 1, what is claimed in the United States application.

**8.** Rule 62 allows an applicant to file a continuing application simply by paying a fee and declaring that it is being filed pursuant to section 120. No oath or declaration involving representations to the PTO must be filed. Under rule 60, one merely needs to provide a photocopy of the declaration in the earlier application.

an examiner also will often issue a final rejection and indicate that, if certain amendments are made to the claims in a continuation application filed pursuant to the streamlined procedures set forth in Rule 62, the examiner will allow those claims and pass them to issuance. Actions such as these, taken by the PTO primarily for administrative convenience, should not increase the burdens on an applicant regarding his ability to obtain patent protection.

Indeed, in this case, Pinsky filed his continuation application merely for the purpose of having the examiner consider an amendment to the claims proposed after final rejection in the parent application, but which was not entered in the parent application on the basis that it did not meet the procedural requirements of 37 CFR § 1.116. This is not an atypical chain of events. To impose upon an applicant the burden of updating the best mode disclosure under this type of circumstance would be unreasonable.[9]

In conclusion, because the relevant date for evaluating a best mode disclosure is the date of the parent application, and because there is no dispute that Pinsky did not believe that the use of steel hooks and longitudinal fasteners constituted the best mode for practicing the claimed invention at the time Pinsky filed his parent application, reversal of these two best mode holdings is necessitated.

III. *Cloth Finish*

A. *Background*

The district court also found that Pinsky violated the best mode requirement by failing to provide supplier/trade name information for the finished glass cloth used in the preferred embodiment of his invention at the time he filed his parent application. The Pinsky patent provides the following description of the cloth at column 2, lines 32–45 (emphasis added):

> The finish employed in this invention can vary widely. Generally, the finish is a *leachable, organic silicate carried in a fatty and mineral oil vehicle*. The finished fabric meets the requirements of U.S. Navy specification Mil–I–24244 with regard to chemical analysis and chemical resistance of materials used in the insulation of stainless steel, as well as the requirements of Coast Guard specification CFL–164.009 relating to incombustible materials. The glass cloth of this invention can withstand repeated wettings from spray systems within reactor containment areas of nuclear power plants and can withstand temperatures of 700°F for at least 40 years.

The district court found the foregoing description of the finished glass cloth deficient in that Pinsky did not additionally disclose that the preferred cloth was Burlington Industries' 603A cloth, which was supplier/trade name information that Pinsky knew at the time of filing his parent application.[10] For the reasons set forth below, we hold that the district court committed legal error when it resolved in this case, on summary judgment, a dispute as to a genuine issue of material fact, namely the adequacy of Pinsky's disclosure. We therefore vacate this part of the district court's decision and remand this issue to the district court for trial.

B. *Best Mode Requirement*

■■■ The determination as to whether the best mode requirement has been satisfied is a question of fact. *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535–36, 3 USPQ2d 1737, 1745 (Fed.Cir.), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987); *McGill Inc. v. John Zink Co.*, 736 F.2d 666, 676, 221 USPQ 944, 951 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83

---

9. We view the fact that there have been relatively few cases to date addressing whether the best mode disclosure must be updated in a continuing application, as to common subject matter, as evidencing how widely accepted it is that there is no such requirement, not that this is an unclear or unresolved issue as Transco and the district court suggest.

10. As a practical matter, we note that Examiners often require that a *generic* description be inserted in place of, or in addition to, a trade name, on the basis that trade names may, over time, come to represent different things. The arguments here appear to assume that the opposite is the case.

L.Ed.2d 404 (1984). The purpose of the best mode requirement is to "restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their invention which they have in fact conceived." *In re Gay*, 309 F.2d 769, 772, 135 USPQ 311, 315 (CCPA 1962). A holding of invalidity for failure to disclose the best mode requires clear and convincing evidence that the inventor both knew of and concealed a better mode of carrying out the claimed invention than was set forth in the specification. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1578, 18 USPQ2d 1001, 1012 (Fed.Cir.1991). The burden of establishing invalidity by this standard lies with the party seeking such a holding, which in this case is Transco.

In *Chemcast Corp. v. Arco Industrial Corp.*, 913 F.2d 923, 16 USPQ2d 1033 (Fed.Cir.1990), this court described the analysis to be employed in determining compliance with the best mode requirement as involving two steps. The first, which is wholly subjective, involves determining whether the inventor knew of a mode of practicing the claimed invention that he considered to be better than any other at the time he filed his application. If the inventor contemplated such a preferred mode, the second step is to compare what he knew with what he disclosed to determine whether the disclosure is adequate to enable one skilled in the art to practice the best mode. The second step, which involves assessing the adequacy of the disclosure, is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art. *Chemcast*, 913 F.2d at 927, 16 USPQ2d at 1036–37 (Fed.Cir.1990). Even where there is a general reference to the best mode of practicing the claimed invention, the quality of the disclosure may be so poor as to effectively conceal it. *Randomex Inc. v. Scopus Corp.*, 849 F.2d 585, 587, 7 USPQ2d 1050, 1052 (Fed.Cir.1988); *see In re Sherwood*, 613 F.2d 809, 816, 204 USPQ 537, 544 (CCPA 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981).

However, the best mode requirement does not require an inventor to disclose production details so long as the means to carry out the invention are disclosed. *Wahl Instruments, Inc. v. Acvious, Inc.*, 950 F.2d 1575, 1580, 21 USPQ2d 1123, 1127 (Fed.Cir. 1991); *see also In re Gay*, 309 F.2d at 774, 135 USPQ at 316. This includes providing supplier/trade name information where it is not needed, i.e., where such information would be "mere surplusage—an addition to the generic description." *Randomex*, 849 F.2d at 590, 7 USPQ2d at 1054. Such supplier/trade name information must be provided only when a skilled artisan could not practice the best mode of the claimed invention absent this information. *See Chemcast*, 913 F.2d 923, 16 USPQ2d 1033 (patentee failed to disclose specific composition of preferred material or fact that it possessed a specific hardness, instead merely supplying a very general description of the material and a broad hardness range, thus effectively concealing the best mode).

## C. Analysis

This case comes before us from a grant of summary judgment, and therefore, as stated previously, our review must focus on whether the district court improperly determined any genuine issue of material fact or committed any other legal error.

Performance does not dispute that Pinsky believed at the time that he filed the parent application that the use of a finished glass cloth like Burlington's 603A cloth constituted the best mode of practicing the claimed invention. The first part of *Chemcast*'s two-step analysis therefore has been satisfied. Thus, the pertinent part of the *Chemcast* analysis at issue in this case is the second part dealing with the adequacy of Pinsky's disclosure. As will be illustrated below, there clearly existed before the district court a dispute as to the adequacy of Pinsky's disclosure, and the district court improperly resolved this issue on summary judgment.

We note at the outset that the district court concluded that "Transco's motion for summary judgment must be denied to the extent that it asserts a failure to disclose the best mode due to an inaccurate description of the invention." The district court was of the

opinion that the evidence of record, viewed in the light most favorable to Performance, adequately supported Performance's position that the description of the finished glass cloth provided in the specification would have apprised one of ordinary skill in the art at the time of filing the parent application of the composition and the pertinent properties required for the finished glass cloth according to the best mode of the claimed invention.

The district court concluded, however, that it was not sufficient in this particular case that one of ordinary skill in the art would have understood the description and known what was needed to practice the best mode. The district court reasoned that the availability to the public of Burlington's 603A cloth prevented Pinsky's description from rising to the level of an adequate disclosure of the best mode. In particular, the district court stated:

> the problem confronting Performance Contracting is that although the skilled artisan could presumably have practiced the art if he or she were actually furnished a product that had the characteristics set out in the generic description, there is no showing that the mere statement of those characteristics would enable the skilled person to replicate the fabric. Hence Pinsky's nondisclosure of the source for the best mode material is the equivalent of concealment if that source was not otherwise known.

*Transco,* 821 F.Supp. at 546 n. 13, 28 USPQ2d at 1745 n. 13. The district court believed that *Chemcast* and *Wahl* require that both a generic description *and* supplier/trade name information be provided in a case such as this.

Performance argues that the court effectively held there to be a per se rule that supplier/trade name information be provided, when available, for a disclosure to be adequate for purposes of the best mode requirement. We disagree. The district court correctly noted that there is no such per se rule.

*Transco,* 821 F.Supp. at 546, 28 USPQ2d at 1745. *See Wahl,* 950 F.2d at 1583 n. 4, 21 USPQ2d at 1130 n. 4; *Randomex,* 849 F.2d at 587, 7 USPQ2d at 1054. Contrary to Performance's assertions, the district court merely held that it believed supplier/trade name information should have been disclosed in this particular case. Even so, the district court erred in finding on summary judgment that such commercial information should have been provided in this particular case for Pinsky's disclosure to satisfy the adequacy prong of *Chemcast*'s two-part test, as this was a fact issue highly disputed. The record evidence before the district court included a July 24, 1992, affidavit by a Mr. Vaughn, the director of research and development of Clark–Schwebel Fiber Glass Corp., one of the three major suppliers of finished glass cloth in the country. Vaughn's affidavit states, in particular, that "the description 'glass cloth having a finish of a leachable, organic silicate carried in a fatty and mineral oil vehicle' that is known to meet Mil–I–24244 and CFL–164.009 is an *accurate description* of glass cloth with a 603A finish" and is one "that *one* of ordinary skill in the art of finishes for glass cloth now, and *in 1973, would understand to be a generic description of a 603A finish.*" (emphasis added).[11] Vaughn's affidavit also states that the 603A finish "became a production finish on 10/13/72," which is corroborated by a September 12, 1983, letter from a Burlington attorney to Owens–Corning.

Also of record is a February 23, 1993, affidavit by Pinsky stating in pertinent part:

> One of ordinary skill in the fiberglass cloth art in 1973 and 1974 would know that the generic terminology used in my patent application applied to the Burlington 603A finished cloth, and its equivalents. In 1973 and 1974 there were only a handful of significant fiberglass cloth manufacturers; the only three of any size were Burlington, J.P. Stevens, and Clark–Schwebel, and all three of these were well known to those

---

11. Transco attacks Vaughn's testimony by characterizing it as "conclusory" and "lawyer generated" and by suggesting that, because Vaughn's employer supplies glass cloth to Performance, Vaughn has an "interest" in this case. Such

concerns, however, carry little to no weight at the summary judgment stage, and in any event there is no suggestion in the district court's opinion that it found Vaughn's affidavit suspect.

seeking to purchase glass cloth for industrial applications.

Pinsky also testified in this affidavit, as well as in one dated July 24, 1992, that the only reason he considered use of the 603A cloth to be the best mode of practicing his invention was because this cloth possessed the necessary properties to comply with government specifications. Pinsky further testified by deposition on September 12, 1991, that Burlington's 603A product was "commercially available in 1973. You could issue a purchase order and they would sell it to you."

Rebuttal evidence included an affidavit of a Mr. Avery, the President of Transco, stating that "[i]n 1971–1974, I was someone skilled in the art of insulation" and that "[i]n the 1971–1974 time period and continuing to this day, I, and everyone I know in this industry, save Mr. Pinsky, have no idea (1) what a glass fabric is that has a finish of a leachable organic silicate carried in a fatty and mineral oil vehicle and that meets U.S. Navy Specification Mil–I–24244 and CFL–164.009 and (2) who makes and sells such a glass fabric." Avery's affidavit also takes specific issue with Vaughn's testimony. Performance counters that Avery is not technically qualified in the art and knows nothing about finishes.

Performance contends that, at the very least, the evidence it presented before the district court was sufficient to preclude summary judgment. We agree. The evidence outlined above illustrates that the district court was faced with a dispute as to a genuine issue of a material fact; namely, the adequacy of Pinsky's disclosure. As discussed previously, there must be no such disputes for summary judgment to be appropriate. Therefore, the district court committed legal error by resolving this issue on summary judgment.

Notwithstanding the foregoing, we feel compelled to comment on the district court's concerns about the availability of the Burlington 603A cloth. The district court has imposed on Performance not only the burden of establishing that a skilled artisan would have understood what was needed to practice the best mode, but also the burden of establishing that the skilled artisan could actually have replicated or obtained the material needed to practice the best mode. Although there may be factual scenarios in which the latter burden would be reasonable, caution should be exercised in imposing such a burden. Otherwise, such a burden ultimately evolves into a per se rule that supplier/trade name information must be disclosed or that an application become a production specification, a result clearly contrary to law.

As recognized in *Wahl*, 950 F.2d at 1579, 21 USPQ2d at 1127, an "inventor's manufacturing materials or sources or techniques used to make a device may vary from wholly irrelevant to critical." Even so, if Pinsky's generic description in this case is indeed sufficient to have apprised a skilled artisan of what was needed to practice the best mode of the invention during the relevant time period, and, if there were indeed a limited number of sources of industrial products of the type required at that time, then it is an entirely defensible position, if not an ultimately convincing one, that a skilled artisan could easily have procured the necessary material to practice the invention. For the above reasons, the decision of the district court on this issue is vacated and the case remanded for further proceedings consistent herewith.

## CONCLUSION

The decision of the district court is

*REVERSED–IN–PART, VACATED–IN–PART AND REMANDED–IN–PART.*

## COSTS

Each party to bear its own costs.